# Peter Showman and wife, *vs.* David Miller and Henry Nykirk.

Though a court of equity will upon proof of fraud, mistake or surprise, rectify an agreement according to the intent of the parties, it will not interfere where the instrument is such as the parties themselves designed it to be ; if they voluntarily choose to express themselves in the language of the deed, they must be bound by it, and where fraud is relied upon it must be averred.

A deed conveyed land to trustees and *"their successors forever,"* and a bill was filed to have it reformed so as to convey a fee-simple estate, alleging that a *mistake* was made in this respect by the party who drew the deed, which mistake was denied by the answer. Held :

That proof by the draftsman that the grantor agreed that the land should be conveyed to the trustees and their successors forever, and that there was

nothing in his instructions showing any intention the land should ever return to the grantor, is not sufficient to establish the alleged mistake.

Where the deed shows that the grantees were to hold the property *in trust,* a court of equity will look to the *surrounding circumstances* to ascertain the true intent of the parties, and if the *mind of the court is satisfied* of this intent, it will reform the deed.

The facts that the grant is to the trustees "and their successors *forever,*" and to them and their "*assigns,*" and that the covenant for further assurance contains the words of perpetuity, "*their heirs,*" and that a good title was to be given, and that a fee-simple *price* was paid for the land, are sufficient to show that the parties intended to convey a fee and not a life-estate.

The warranty in the deed against the grantor and his heirs, and the covenant for further assurance to the grantees and their heirs, constitute an estoppel, and entitle the grantees to a decree for specific performance of deed in fee by the grantor.

APPEAL from the equity side of the Circuit Court for Washington County.

The bill in this case was filed on the 16th of April 1852, by the appellees, to correct an alleged mistake in a deed executed by the appellants to them, and one James Malone now deceased, dated the 17th of October 1837. The allegations of the bill and answer, and the facts of the case, are sufficiently stated in the opinion of this court. The court below (PERRY, J.,) passed a decree directing the appellants to convey to the appellees *and their heirs,* the land mentioned in the original deed, subject to the trusts and conditions therein contained. From this decree the defendants appealed.

The cause was argued before LE GRAND, C. J., ECCLESTON and MASON, J.

*Jervis Spencer* for the appellants argued, that it was not a case in which a decree can be passed to reform the deed :

1st. Because no mistake is sufficiently shown by the proof. The person who drew the deed proves, that at the time it was drawn the parties were all together, that Showman required trustees to be elected, and he was instructed to make the deed in the very words which were used in it. The answer utterly

denies that there was any mistake, and when this is the case, the law requires the strongest and clearest proof of the existence of the mistake before the deed will be reformed. 2 *Md. Rep.*, 35, *McElderry vs. Shipley.* 6 *H. & J.*, 445, *Watkins vs. Stockett.* 1 *Story's Eq.*, sec. 116. 2 *Do.*, sec. 767. *Angel on Insurance*, sec. 22. 1 *Pet.*, 15, *Hunt vs. Rousmanier's Admr.*

2nd. Because of the lapse of time and acquiescence of the parties. 2 *Story's Eq.*, sec. 1520.

3rd. Because the complainants by reason of an abuse of the trust, by permitting public worship in the school-house, contrary to the condition of the deed, are not in a position to ask the interposition of a court of equity in their favor.

4th. Because the decree requires the deed to be executed to the complainants and their heirs, whereas if any new deed can be decreed it should embrace the heirs of James Malone, deceased, as well as the complainants.

*William Price* for the appellees, argued.

1st. The first point is, that no mistake is sufficiently shown. The general doctrine of mistake is, that the instrument shall be made what the parties intended it to be. *Gillespie vs. Moon*, 2 *Johns. Ch. Rep.*, 585. The exception to the rule is, that the parties have deliberately and upon consideration, chosen the form as well as the substance of the instrument just as it is, and the court will not change it merely because it does not effect the object intended, because such instrument is, after all, what it was intended to be; but in such case the proof must be clear, that the particular instrument, and no other, was the deliberate choice of the parties. *Hunt vs. Rousmaniere*, 1 *Pet.*, 1. That the present case is within the rule and not the exception, is the principal proposition which I am to maintain.

Note the facts in *Gillespie vs. Moon*, and the reasoning of the chancellor upon them. He examines first, the presumptive evidence of the mistake, from the facts surrounding the transaction; and then the parol evidence in connection with

61    v.6

these presumptions.   There is no proof in the case, and the chancellor requires none, of a mistake by the draftsman in his preparation of the instrument.   The mind of the chancellor is occupied throughout with the general question, whether the deed was what the parties intended it to be?   And the test of the sufficiency of the proof is declared by him to be—*"does it satisfy the mind of the court?"*   See 1 *Story's Eq.*, sec. 176. In this case the proof of the mistake is of the same character precisely.   The deed proves it, the intention to convey an estate in perpetuity being evident in every line of it.   The words, *"and their successors forever,"* prove the whole case. The parol evidence proves it.   Showman was to make a good deed, or good right or good title, and what is a good deed, or right or title, but a fee-simple?

This is not a case where the parties, upon consideration, determined that the deed should be drawn in this particular form and no other.   It seems the parties had already begun the erection of the school-house.   But the deed for the lot was not executed, and some of them refused to proceed further, until they had the deed.   Showman was to make a good deed or a good title, and they gave themselves no concern about the form.   They gave no instructions, and when the deed was presented to them, looked only at the substance, and supposing that to be all right, proceeded with their building.

But suppose the mistake is not proved, then we say there is a covenant of further assurance in the deed, and what is the meaning of that?   Its meaning is, that if the first deed should fail to carry out the intention of the parties, Showman was to make another that would carry it out.   And thus, whether there was a mistake or not, the covenant must mean this, or it is good for nothing.   This covenant supposes the parties, from want of legal knowledge or skill, may fail in their first attempt to pass the title, according to their agreement, and obliges the grantor in every such case, to make such a deed as will pass the title.   The appellees therefore are entitled to the relief they seek, whether there was a mis-

take or not. But there is a mistake, even in this covenant itself, for it makes Showman and wife oblige themselves *and their heirs*, to execute any further deed which may be neces- sary to quiet the possession and assure the title of *Showman and wife*. The mistake is here so obvious, as to require no further proof, and the court will correct the mistake in the covenant, and decree a specific execution of it. *Newcomer & Stonebraker vs. Kline*, 11 G. & J., 457.

2nd. The second point raises the objection of the lapse of time and acquiescence of the grantees. Now the whole time elapsed, is fourteen years and six months. But the parties to this suit are the original parties to the contract. The property is the same without change, and has been all the time, and is now in the possession of the grantees. The right of no third parties intervening, and no valuable improve- ments made by a purchaser without notice. Those are the cases to which the objection of lapse of time applies. See *Beard's Exc'x vs. Hubble*, 9 Gill, 420; and *Gillespie vs. Moon*, 2 Johns. Ch. Rep., 602. The grantees have not suffered by the delay. 1 *Story's Eq.*, sec. 165. 1 *Spence's Eq.*, 61, 62.

3rd. The third point is, that complainants have abused the trust by permitting public worship in the school-house. This is at best a strange condition, and it is clearly proven, that it was no part of the contract between the parties, but inserted in the deed by the direction of Showman without the knowl- edge or sanction of the grantees. But what does this clause amount to? It is not a condition, upon the happening of which the estate is to be void. 2 *Bouv. Inst.*, 272, sec. 4. See 2 *Crabbe's Law of Real Property*, secs. 2135, 2136, 2137, as to the distinction between a condition and a limitation. Also, sec. 2138, as to the distinction between a condition and a covenant. Such conditions are not favored in law and are construed strictly. 4 *Kent*, 129.

4th. The fourth point is in substance, that a material party has been omitted. Upon the death of one of the trustees, the trust devolved on the survivors. *Hill on Trustees*, 303. There is nothing, therefore, in this point.

LE GRAND, C. J., delivered the opinion of this court.

The bill in this case was filed for the purpose of having corrected an alleged *mistake* in a deed, executed on the 17th day of October 1837, by the defendants to the complainants and another, now deceased, as trustees. The bill sets out that the citizens of a particular neighborhood being anxious to erect a school-house, agreed with the defendants for the purchase of the land mentioned in the deed, "and that it was fairly and distinctly understood between the said Peter Showman and wife, and the said neighbors, parties to the said arrangement, that the said purchase was of the fee-simple," "and the said deed was to be executed, conveying to the said trustees the said piece of land in fee-simple." It also alleges, that although the deed was intended to convey the fee-simple, it "has, *by the mistake of the draftsman* of the said deed, in omitting to insert therein the apt and legal words of inheritance, been drawn and executed in such form as to convey only a life estate to the said trustees and the successors or survivor of them."

The defendants, in their answer, "*utterly deny that the said deed was intended to be anything other than it was,* or that it was intended to convey to the said grantees, as individuals, or in their own right." And they also "*deny that there was any mistake in the drawing of said deed.*"

The only witness whose testimony can be deemed important to the inquiry submitted to us is that of John Brantner, the draftsman of the deed. He says, in reply to the fifth interrogatory propounded to him, that "the neighbors were all assembled on the ground which had been marked out for the school-house, and Showman being there, he, (Showman,) remarked, "that trustees should be selected in order that the deed might be made. The persons present then immediately elected Messrs. James Malone, (now deceased,) Daniel Miller and Henry Nykirk, the trustees. After the election of the trustees, this deponent, at the request of Showman, wrote the deed; and this deponent saith, that he understood Showman to say and agree that the property was to be conveyed to the trustees and their successors forever. There was nothing in the instructions by Showman that showed any intention that

the property conveyed in the deed was ever again to return to Showman.''

Although a court of equity will, upon proof of fraud, mistake or surprise, raise an equity by which an agreement will be rectified according to the intent of the parties, it will not interfere where the instrument is such as the parties themselves designed it to be.   If they voluntarily choose to express themselves in the language of the deed, they must be bound by it. *McElderry vs. Shipley, et al.*, 2 *Md. Rep.*, 35.

In the case before us, the aid of the court is invoked exclusively on the ground of *mistake.*   There is no allegation in the bill, of fraud.   Where fraud is relied upon, it is essential that it should be averred.   In the case of mistake, the Court of Appeals, in the case of *Watkins vs. Stockett*, 6 *Harris & Johns.*, 445, adopting the decision of Lord Thurlow, in *Irnham vs. Child*, 1 *Bro. Ch. Rep.*, 92, observe, "that the proof of a mistake should be established as much to the satisfaction of the court as if it were admitted, and that the difficulty of doing this is so great, that there is no instance of its prevailing against a party insisting there is no mistake.''

The defendants in the present case "utterly deny'' there was any mistake in the character of the deed, and insist it was what it was intended to be.   The testimony of the draftsman does not in anywise show a different intention, but merely declares he did not understand the property was ever again to come to the appellants.   He does not say he was so told by either the appellants or any one else, but merely gives an opinion to this effect.   Such evidence surely falls far short of the fullness required where an alleged mistake is sought to be proven and rectified.

But it is said the deed, on its face, shows that the grantees were to hold the property in *trust*, and in such a case a court of equity will look to the *surrounding circumstances* to ascertain the true intention of the parties, and when discovered will give them the proper form.

The doctrine on this subject was most fully and elaborately examined by Chancellor Kent, in the case of *Gillespie vs. Moon*, 2 *Johnson's Ch. Rep.*, 585.   The learned chancellor,

whilst he held that all the cases required the evidence to be full and strict, deduced from them the practical rule, that if the mind of the court be satisfied, then the requisition is complied with.

In the present case there is abundant evidence to show to the satisfaction of the court the real intention of the parties. In the first place, the grant is to the trustees "and their successors *forever.*" Second, the conveyance is to them, "their successors and *assigns.*" Third, the covenant for further assurance contains the necessary words of perpetuity—"their heirs." It is true, these words, as they stand in the covenant, are applicable to the grantor and wife and not to the grantees, but this is manifestly and undeniably an error. The intention of the covenant could not have had any other purpose than to assure the grantees, whereas, from unaccountable error, it is made applicable to the grantors, which is nothing short of positive nonsense. This error was not only not denied by the counsel for the appellants, but, as he was compelled to do, conceded by him.

The deed on its face shows, that the property was designed to be parted with *forever;* and also, that it is now in the power of the grantees to continue the trust by *assigning* it from time to time. These circumstances, when taken in connection with the covenant for further assurance—which, if reformed, would bind the grantors to give a deed in fee-simple—and the further fact, that a good title was to be given and that a fee-simple price was paid for the land, show satisfactorily enough to the mind of a court of equity what was the real purpose of the parties. In the case of *Terrett and others, vs. Taylor and others,* 9 *Cranch,* 53, the Supreme Court, in a case similar to this, said: "It would seem, therefore, the present deed, (the one in that case,) did not operate by way of *grant* to convey a fee to the church wardens and their successors; for their successors, as such, could not take; nor to the church wardens in their natural capacity; for 'heirs' is not in the deed. But the covenant of general warranty in the deed binding the grantors and their heirs forever, and warranting the land to the church wardens and their successors forever, may well operate by way of estoppel to confirm to the church and its privies the

perpetual and beneficial estate in the land." The same doctrine was recognised in the case of *Mason vs. Muncaster*, 9 *Wheaton*, 445. In that case a bill in equity had been filed to rescind a purchase made under the decree in the case of *Terrett vs. Taylor*, upon the ground that the title to the property was defective and could not be made by the vestry and other persons, who were parties to that suit. But the court held that a sale by them of the church lands, with the consent of the minister, under the decree, conveyed a good title to the purchaser. The decree in *Terrett vs. Taylor* recognised the right of sale because of the general warranty in the deed. In the case before us, the deed contains not only a warranty, but also a covenant for further assurance. These constitute an estoppel and entitle the grantees to a decreed for specific performance, for it is manifest, the covenant for further assurance was intended to be to the grantees and their heirs, and not to the grantors.

We think the right and justice of the matter is clearly with the complainants, and that a decree ought to be signed requiring the execution of a deed in fee by the appellants to the appellees, in trust, for the purposes originally contemplated.

*Decree affirmed.*