## GUSTAVUS BEALL *vs.* MOSES GREENWADE'S Adms.

Where a *bond* is executed, it must itself constitute the *only evidence* of the contract between the parties, and its force or legal effect cannot be varied by any parol agreement or explanation which might be supposed to accompany and explain it.

A bond always imports in law more than the usual deliberation and caution in the parties executing it, and when sought to be avoided on the ground of fraud, accident or *mistake*, the evidence must be strong and conclusive.

APPEAL from the Equity Side of the Circuit Court for Allegany county.

The facts of this case are sufficiently stated in the following opinion of the court below, (WM. PRICE, Special Judge,) delivered upon passing the decree appealed from:

"The bill in this case is for relief against a judgment at law, and for an injunction. The bond on which the judgment was recovered, bears date the 4th of November 1842, and is for the sum of $3042.51. The original bill alleged a contract inconsistent with the face of the bond, which it sought to have enforced and the bond cancelled. By an amendment to the bill it is alleged that the bond was executed by mistake, which consisted in the omission of the words 'payable in canal scrip and bonds.'

"The case made by the bill is, that during the period from 1838 to 1842, both inclusive, Mr. Greenwade, who was a farmer of wealth, delivered his produce to Mr. Beall, a miller and a merchant, who was authorised, in disposing of it, to receive the issues of the Chesapeake & Ohio Canal Company,

called canal scrip, and acceptances, in payment, and that Greenwade was to receive in the same manner the canal scrip from Beall.    That during the period alluded to the parties had usually yearly settlements, in closing which Mr. Beall gave his notes to Mr. Greenwade, which were simply intended to represent the amount of canal scrip and acceptances which Mr. Beall at these times had on hand.    The bill states, 'that this manner of doing business between your orator and the said Moses Greenwade continued under the said agreement up to the 4th day of November 1842, at which time your orator and the said Greenwade mutually determined not to sell any more produce of the said Greenwade for canal scrip and bonds, and upon that day adjusted and settled the amount which had been previously sold by your orator, and for which he had given his several notes to the said Greenwade as aforesaid, including an account for about the sum of $119, and found the amount then in your orator's hands to be the sum of $3042.51.    That your orator then executed a new bond or single bill, dated Nov. 4th, 1842, at one day after date, for the said sum of $3042.51.'.

"The bond of which this history is given is that which proves the subject matter of this controversy.    It is under seal, in which respect it differs from all the prior papers given by Mr. Beall to Mr. Greenwade.    It is payable to order, and is declared on its face to be '*for value received.*'    It omits the clause which seems to have been carefully inserted in five of the prior notes, declaring that they were each 'for produce sold for currency.'    It is upon its face an absolute bond, without defeasance or condition of any kind.

"The defendants' exhibit No. 1 is admitted by Mr. Beall to be in his handwriting.    It is a statement of the account between the parties at the time of their last settlement, and presents the items which make up the sum of $3042.50, for which the bond in controversy was given.    The various notes given by Beall to Greenwade, from 1838 to 1842, inclusive, are all set down, the interest upon each added, and the whole amount is footed at $3161.61, from which sum is deducted Beall's book account against Greenwade of $119.10, and the bond is given for the balance of $3042.51.

"All the notes given by Beall to Greenwade, from first to last, were, it is alleged, payable in canal scrip, and that the bond of November 4th, 1842, is a mere reduction of all the prior notes into one, and as they represented the amount of scrip held by Beall for the use of Greenwade, so did this bond, in like manner, represent the said scrip.

"It is quite material to note that canal scrip in 1838 circulated as money, and was received in the community at par. In 1840 it had suffered a depreciation to some extent, and in 1842, when the bond in question was given, it was at a discount of fifty *per cent*. It is material also to state that the scrip issued by the canal company while Mr. Washington was president, and signed by him, called the Washington scrip, was protected by an assignment of Maryland sterling bonds, and by that assignment was secured against depreciation, while the scrip and bonds issued after June 1839, by Gov. Thomas, usually called the Thomas scrip, were without protection of any kind, and have consequently fluctuated in value according to the varying fortunes of the canal. In 1842 they were up to fifty, but have never been worth that much since. Now they would not bring more than fifteen cents in the dollar upon their face.

"The bonds and scrip brought into court by Mr. Beall, enveloped, as he says they were, in 1842, to be in readiness for Mr. Greenwade, and now tendered in payment of the debt, are all of the Thomas issue, and of the least valuable of those. Assuming, however, the contract to have been, as Mr. Beall alleges, the only mode in which his part of it could be performed and do justice to Greenwade, would be, by tendering the Washington scrip in payment of the notes given by him at the time that scrip was in circulation, and the Thomas scrip in payment of the notes given in his time. It is not a supposable case that Greenwade would consent to a settlement upon any other terms.

"The bond of November 4th, 1842, was designed however as a settlement of the dealings previously existing between the parties. And that settlement necessarily involved the examination into the value respectively of all the prior notes of Mr.

Beall. It is fair to presume, as all dealings of the character described were to cease from that time, if Mr. Beall could produce the Washington scrip for his first notes he would have done so, and that Greenwade would not let him off with any other. And for the last notes, in point of time, he would have been allowed to tender the Thomas scrip. But if he were not prepared to produce the Washington scrip in satisfaction of the notes representing these issues, the parties would have, for the purposes of the settlement, to ascertain the separate value of each note and agree upon the sum which would fairly average the whole, and for this sum the bond would be executed and the note in question would represent money.

"Mr. Beall, according to his own theory, was not to pay in money, but in scrip. According to the testimony of Mr. Worthington he was to 'work it off' for Greenwade. When therefore the parties came together for a settlement in November 1842, Mr. Beall had either worked off Greenwade's scrip or he had not. If he had not he was not bound to pay in money, and had therefore only to produce the scrip. If he had worked it off, then he was accountable in money for the amount he had received for the scrip. At the settlement in November 1842, we hear nothing of a tender in scrip. On the contrary Mr. Beall gives his bond, under seal, for value received. What is the inference? It is that the amount named in the bond was due in money.

"I am of opinion that the mistake alleged is not made out by the proof. I do not intend to say that the phrase 'for value received,' gives any validity to the bond which it would not possess without it. But it is considered significant of what was in the minds of the parties at the time, and imposes upon the complainant the burthen of showing the double mistake of inserting the words 'for value received,' and omitting the words 'payable in canal scrip and bonds.' The mistake not having been made out by proof, the consequence is that the instrument must stand as the highest evidence of the contract between the parties, and the said evidence adduced is inadmissible. But if this were not so, am of opinion that Mr. Beall has failed to make out a case upon the merits."

The court then passed a decree dissolving the injunction and dismissing the bill, from which the complainant appealed.

The cause was argued before LE GRAND, C. J., ECCLE-STON and MASON, J.

*Thos. J. McKaig, Geo. A. Pearre* and *Wm. W. McKaig* for the appellant, argued:

1st. That it is clearly proved that the bond in question was not drawn or written, as it was intended, by the parties, but that it was drawn by mistake, as it now is. The proof we rely upon is:—1st, that all the prior notes express upon their face to be for produce sold *"for currency,"* or *"payable in currency;"* 2nd, that the *bond* is made up of all these previous *scrip notes*, with interest added, as proved by defendants' exhibit No. 1, which is a statement of the amounts of the various notes making up the amount of the bond; 3rd, that Greenwade admitted that the bond was to be paid in canal scrip and bonds, as proved by Gustavus Beall, Jr.; 4th, that Greenwade frequently said he was selling *for scrip*, and when told that canal scrip was no better, but getting worse, he would say, *"I will leave it with Beall, he can *work it off,"* as proved by Worthington. This testimony is offered to show that the bond was, by *mistake*, not drawn according to the intention and understanding of the parties at the time; for this purpose it was legally competent, and if the court should think it sufficient, the bond will be reformed. 1 *Story's Eq.*, secs. 155, 156.

2nd. That it is clearly proved that Greenwade's produce was sold for a *depreciated currency*. It is admitted that on the notes which make up this bond interest was allowed to Greenwade. The bond then, which he is now endeavoring to collect, is for a depreciated currency, with interest added. Is this a just claim? This court has decided that where a party loans country money—uncurrent money—and takes a note for the par value, it is usury, and the holder will not be allowed to recover on the note. 2 *H. & G.*, 13, *Caton vs Shaw.* Is not that the case here?

3rd. That at law the appellant had no remedy against the

mistake in drawing the bond. In no case at law can parol evidence be offered to show mistake in drawing the deed, the remedy is in equity alone. 11 *G. & J.*, 457, *Newcomer vs. Kline.* 5 *Gill*, 468, *Baynard vs. Norris.* 7 *Cranch*, 332, *Marine Ins. Co. vs. Hodgson.*

4th. That the facts referred to, which would show that if there was no mistake in drawing the bond then the bond was usurious, which the court will not presume, is strong corroborative evidence that it was, by mistake, not drawn in accordance with the intention of the parties.

*Samuel M. Semmes* for the appellee.

The record sufficiently shows, that the ground upon which Beall *first* rested his claim to an injunction, was not any pretence or allegation that the bond had been obtained from him by fraud, accident or surprise, or that it was not written in the words it was intended to be, but because, as he alleged in his original bill, it was executed and delivered with the understanding that the consideration he had received for it was canal scrip and bonds, and that it was to be redeemed or paid in like funds, unless he could exchange the scrip and bonds into bankable money, which he had failed to do after making all reasonable efforts. In reply to this the defendants need not have said anything more than what, among other things, they did say, to wit, that the bond was the only exponent between the parties of the contract contained in it, and that it could not be added to, changed or contradicted, by any parol appendix, amendment or explanation, set up as appurtenant to the same, in the absence of all show of fraud, accident, surprise or mistake, in the preparation of the bond. 6 *H. & J.*, 27, 29, *Wesley vs. Thomas.* 1 *Johns. Ch. Rep.*, 429, *Stevens vs. Cooper.* 6 *Ves.*, 328, *Townshend vs. Stangroom.* 1 *Story's Eq.*, sec. 172. 2 *Md. Rep.*, 25, *McElderry vs. Shipley.* Seeing this difficulty the complainant amended his bill, alleging, by way of amendment, that the bond was drawn in its existing form by *mistake;* that it should have been made *payable in canal funds*, unless Beall should succeed in exchanging the scrip and bonds for good money.

Beall *vs.* Greenwade's Adm'rs.

Now it appears from the statement, or paper No. 1, that all the notes making up the amount of the bond, *except one*, bear date *prior* to the 9th of July 1840, the date of the *first issue* of the Thomas scrip. It is abundantly proved, indeed established by all the testimony and admissions in the case, that all the scrip issued by the canal company prior to this date became a preferred currency, was redeemed whenever presented, was bankable, and even better than silver or gold, as they contained a promise for the payment of interest, and were secured by a pledge of State bonds or stocks, all of which made them favorite deposits with the banks. If then Beall took canal scrip and bonds on the sales of Greenwade's produce, prior to the 9th of July 1840, it must have been the Washington scrip, which was *bankable money, serving the purposes of trade as well as specie.* Now I ask what became of this scrip? Was it the scrip shown to young Beall at the store in March 1849, and wrapped up in the envelope, endorsed, " canal bonds and scrip belonging to Mr. Moses Greenwade?" The contents of this envelope were $45 in scrip of the *Thomas issue*, and three *canal bonds*, one for $2000, and the other two for $500 each, *all dated in* 1842. How then could the scrip and bonds, the contents of this envelope, be the scrip and bonds which Beall had received for Greenwade's produce?

The note for $394.69, dated the 5th of March 1842, is the only one of all the constituents of the bond which bears date after the first issue of the Thomas scrip. It may be remarked, even as to this issue of scrip, that though unsustained except by the credit of the company, it was proved that at first it circulated as currency and passed in business transactions at par—that it had such currency pretty generally in 1840. But even this note does not aid the complainant's case, as I shall show. William R. Beall says he was present at the settlement made on the 5th of March 1842; that Greenwade's credit was then $1014.38; that Beall's account in bar was $619.69, including $200 of *canal scrip*, charged in November 1840, and the balance in money and merchandise, leaving a balance of $394.69, for which the note of the 5th of March 1842 was given. Now Beall says, that all the previous notes were upon

their face *"for produce sold for currency,* except the one for $230, dated *the 9th of May* 1840, which was the last previous to that of March 5th, 1842, and which was in the form of a *due-bill,* for that amount of *" canal scrip deposited with me this day for safe keeping, payable on demand."* Is it not reasonable then to suppose that the $200 canal scrip, charged to Greenwade in November 1840, was a payment to him on account of this deposit? If Greenwade's credits of $1014.38 were only credits for canal scrip, is it not strange that Beall in his set-offs should have noted the debit item of $200 as canal scrip, and that the balance of the debits should have been applied, without any note of explanation or remark, to Greenwade's credits? Let me here add also the scrip item of $50, put into Beall's account of $119.10, accruing *after* the 5th of March 1842, and which account was set off by Beall at the final settlement in November 1842. These explanations show, that so far from the consideration of the note for $394.69 being canal scrip, which Beall had received on sales of Greenwade's produce, and which had been left with him to be exchanged for bankable money, it was for a legitimate balance which had accrued to Greenwade since the settlement of the last accounts current between him and Beall. And they further show how it was, that, at the settlement of November 4th, 1842, no distinction was made between the scrip due-bill and the other notes mentioned in paper No. 1. But omitting all explanations in regard to this scrip due-bill, it would have been sufficient to show, to put it on a par with the other notes, that the scrip it represented was the Washington scrip, and this is shown by the date of the due-bill.

But supposing this note of the 5th of March 1842, and all the others, except the scrip due-bill, were in the form stated by Beall, viz., "for produce sold by him *for currency,"* how does this help the case? I should think this expression, *"for currency,"* could not be construed, in law or equity, to oblige Greenwade to receive in payment depreciated canal scrip and bonds which had ceased to be part of the currency. The currency at the dates these notes were given consisted of western money, Virginia money, eastern money and canal scrip, until

Beall *vs.* Greenwade's Adm'rs.

1840. It seems to me that the words, "*for currency,*" were used to signify merely that gold and silver was not the circulating medium at the time, as in truth it was not, the banks having suspended specie payments from 1838 until the fall of 1842. At the time the bond in question was given the banks had resumed specie payment, and hence there was nothing peculiar in the currency of the times to suggest the use of any unusual words in it. It was drawn by Beall himself, differently, by his own showing, from the originals for which it was exchanged; and why, being a man of intelligence, a merchant of long standing, owning stores and mills, did he not, instead of drawing the bond in the form he did, draw a note in the form he drew the other notes during the suspension of specie payments, if he did not mean and intend the bond should be precisely what it is—a note under seal, redeemable (now that the banks had resumed specie payment) in the constitutional currency, if demanded? The bond was, no doubt, drawn in the form it was meant and intended to be, and no one who knows Mr. Beall can be made to believe, he was a man to commit *mistakes when writing bonds against himself.*

MASON, J., delivered the opinion of this court.

We can discover no error in the decree of the circuit court, and we therefore affirm it, for the reasons assigned by the judge in his opinion.

The ground first assumed by the complainant was, not that the bond in question had been obtained by fraud, accident or mistake, or that it was not in the language it was intended to be written, but that it was executed and delivered, accompanied with a parol understanding wholly different and inconsistent with the legal purport of the bond itself. Such a position is untenable, as the bond itself must constitute the evidence, and the only evidence, of what the contract was between the parties, and its force or legal effect cannot be varied, by any parol agreement or explanation which might be supposed to accompany and explain it. But by the amended bill it is charged that the bond was written, in its present form,

25     v.9

through *mistake.* This is a question purely of fact, and, upon all the evidence in the cause, we are constrained to say that the allegation has not been sufficiently established, so as to defeat the legal effect which has always been given to instruments of such solemnity and dignity as bonds, and which always import, in law, more than the usual deliberation and caution in the parties executing them.

If the case of the appellees was unaided by the bond, and the question of indebtedness stood alone upon the transactions between the parties prior to its execution, a very different state of case would be presented. But we are not prepared to declare so solemn an instrument as a deed, duly signed and sealed, to be void, except upon the strongest and most conclusive proof of fraud, accident or mistake in its execution, neither of which, in our opinion, has been sufficiently made out by the evidence before us. *Watkins vs. Stockett,* 6 *Har. & John.,* 445. *Showman vs. Miller,* 6 *Md. Rep.,* 479.

<div align="right">

*Decree affirmed with costs.*