(Decided December 3rd, 1896).

---

HARRY L. BUCHANAN *vs.* THE MECHANICS' LOAN AND SAVINGS INSTITUTION ET AL.

*Bills and Notes—Partnership Note Payable to One Partner—Rights of Bona Fide Endorsee—Taking Note for Pre-existing Debt—Transfer of Note as Collateral Security—Distribution of Partnership Assets.*

When a promissory note is drawn by a partnership payable to one of the partners, and is by him endorsed for his own debt to a third person, who takes the same *bona fide*, before maturity, such endorsee has all the rights of a creditor against the firm, and upon its insolvency is entitled to share equally with partnership creditors in the distribution of the assets.

A person to whom a negotiable promissory note is transferred before maturity in payment of a pre-existing debt is a *bona fide* holder for value.

A promissory note drawn by a firm to the order of one of the partners was endorsed by him before maturity to a party as collateral security for such partner's individual debt. The firm subsequently became 'insolvent. *Held*, that the holder of the note was entitled to share in the distribution of the partnership assets equally with partnership creditors to the amount of his claim, the note so held as collateral being taken as the basis of the calculation of the amount of the dividend to be allowed.

In this case the nature or form of the note so transferred affords no sufficient ground for imputing bad faith to the endorsee, and there is no evidence of any actual fraud on his part.

Appeal from an order of the Circuit Court for Washington County (STAKE, J.) sustaining exceptions to an auditor's account, distributing the assets of the insolvent firm of J. C. Dayhoof & Co.

The cause was argued before McSHERRY, C. J., BRYAN, FOWLER, ROBERTS and BOYD., JJ.

*Buchanan Schley*, for the appellant, cited:   *Townsend* v. *France*, 2 Houston (Del.) 452 ; *Blackmer* v. *Phillips*, 67 N. C. 340 ; *Smith* v. *Lusher*, 5 Cowen, 688 ; *Bush* v. *Peckard*, 3 Harrington, 389 ; *Thompson* v. *Lowe*, 111 Ind. 276 ; *Collyer on Partnership*, sec. 447 ; *Spinning* v. *Sullivan*, 48 Mich. 7 ; 2 *Pomeroy Eq. Jur.*, sec. 748 ; 1 *Story Eq.*, sec. 64 ; *Parsons on Bills and Notes*, 219.

*Norman B. Scott, Jr.*, and *J. A. Mason*, for the appellees.
It is a fundamental principle that a member of a firm who is a creditor thereof cannot as such creditor participate in the assets of the firm until all the other creditors of the firm are paid in full. Mr. Yessler, being a member of the firm, could not as the holder of the note in these proceedings mentioned participate in the funds of the said insolvent firm. *Amer. & Eng. En.*, vol. 17, page 1195 and note ; *Amer. & Eng. En.*, vol. 17, p. 1207, note 1 ; *Lindley on Partnership*, p. (bottom) 684, 810 ; *Story on Partnership*, secs. 361, 362 and note, 376, 390, 405, 406 and p. 573 ; *Houseal & Smith's Appeal*, 45 Pa. St. Rep. 487 ; *Story's Eq.*, secs. 675, 1207, 1253.

The rights of the creditors of a partnership are worked out through the equities of the partners. Mr. John C. Yessler, the partner and payee of the note, not being permitted to participate in the funds arising from the partnership assets of the insolvent firm of which he was a member until all the creditors thereof are paid in full, his assignee of said note, the appellant, acquires no superior rights and cannot do so. *Adams's Equity*, p. 244; *Edison Co.* v. *De Mott* (N. J.), 25 Atlantic Rep. 952; *Simrall* v. *O'Bannon*, 7 B. Mon. Reports, 608.

The assignee, Buchanan, is not an innocent holder in the sense in which this term is used in the ordinary processes of commercial paper. He took the note from a partner payable to such partner and signed by said partner, not only did he by this method become apprised of the partnership, but the testimony shows that he had actual knowledge of the partnership relation of the man who was both payee and maker of the note. This was surely sufficient notice of the infirmities of the paper and the equities applicable thereunto. *Thompson* v. *Hale*, 6 Pick. 259. His Honor, JUDGE STAKE, has most properly said in his opinion : " If it should be held that the assignment of Yessler to Buchanan confers upon Buchanan a right to participate in the distribution of the partnership assets, the legal effect would be to allow a creditor of the individual insolvent partner, holding an invalid claim of the parties against the partnership assets to secure payment of his claim against the individual partner out of the partnership assets." Yessler as a member of said firm is liable for said note, but by his act of assignment he undertakes to convert this liability into an asset wherewith he would pay his individual debts. To sustain such action would be to deprive partnership creditors of the benefit of the assets of the firm, and would open the doors to defraud and wrong every one who dealt with a partnership, its property and assets.

FOWLER, J., delivered the opinion of the Court.

The appellant was a creditor of John C. Yessler, who was a member of the firm of J. C. Dayhoof & Company. Yessler held the promissory note of his firm for the sum of $2,000, payable to his own order one year after date. In the early part of March, 1894, Yessler endorsed this note before maturity to the appellant as collateral security for the payment of an indebtedness of $815, of which $500 was evidenced by a note of said Yessler for that amount, and the remainder consisted of an open account of $315 for cash loaned at various times. Subsequent to the endorsement of the firm's note of $2,000 by Yessler to the appellant the firm became insolvent, and receivers were appointed by the Circuit Court of Washington County to wind up its business. During the progress of the distribution of the firm's assets the auditor of that Court filed account designated No. 1, in which the sum of $5,911.36 was distributed among the general creditors, among whom the appellant was numbered, the auditor having allowed him $719.83 on account of the $2,000 note as part payment of the indebtedness of $815. To this allowance the general creditors of the firm excepted. Their exceptions were sustained by the Court below, and hence this appeal.

The exceptions were based upon a variety of grounds, as appears by the record, but the only ones relied upon here and which we think necessary to consider are, first, that inasmuch as Yessler, the appellant's endorser, was a member of the firm, and would not, therefore, be entitled himself to share in the distribution of the partnership assets until the payment in full of all the partnership debts, his endorsee stands in no better position ; second, that the transfer of the $2,000 note was fraudulent, and third, that said note, having been passed to the appellant as collateral security for the payment of a pre-existing debt, was not therefore endorsed to him in the ordinary course of business, and that consequently he was not a *bona fide* holder for value without notice within the meaning of the settled rules regulating the transfer of commercial paper.

The first exception appears to be founded on the general rule, about which, of course, there can be now no difference of opinion, that a partner cannot share in the partnership assets until all the firm creditors have been paid in full. Whether this rule can properly have any application to this case depends altogether upon the legal effect of the endorsement by Yessler to the appellant. If that endorsement is to have its ordinary legal effect given to it by the well-settled rules applicable to the endorsement of commercial paper, the fact that the firm or its creditors had a good defence against the note in question while in the hands of Yessler, would not avail them as against the appellant. But if on the other hand such endorsement is to be considered merely as an assignment, or if the note itself can be held as constituting notice to the endorsee of existing equities, then the appellant would stand in the shoes of Yessler, and would not be entitled, as against the *creditors of the firm*, to share in the distribution of its assets. What then is the legal significance of the endorsement? This question is answered by Mr. Bates in his work on *Partnership*, section 884, where he says that while a partner cannot sue, yet the note in his hands is not void; "but the difficulty is one attending the remedy rather than the right, and vanishes on endorsement to a third person for value." The transfer, however, he says, must be *bona fide* and not colorable only. In support of this view he cites many authorities, some of which relate to transactions like the one before us, where the rights of an endorsee of a member of the firm of the firm's paper are directly involved, and some of them involve only generally the rights of a *bona fide* endorsee for value. Thus in the case of *Smyth v. Strader et al.*, 4 How. 404, Stevenson, a member of the firm, drew two notes of the firm to his own order and endorsed them to Stroson & Campbell, of New Orleans, who in turn endorsed them to the plaintiff in that case. Although these notes were fraudulent in fact because Stevenson endorsed them to the first endorsee to pay an individual claim, yet it was held by the Supreme

Court of the U. S., McLEAN, J., delivering the opinion, that while Stevenson could not recover because he was a partner, yet his *bona fide* endorsee could.   See also to the same effect *Smith* v. *Lusher*, 5 Cowen, 688 ; *Nevins* v. *Townsend*, 6 Conn. 7 ; *Moore* v. *Denslow*, 14 Conn. 237 ; *Davis* v. *Briggs*, 39 Maine, 305 ; *Thayer* v. *Buffman*, 11 Metc. 398 ; *Waterman* v. *Hunt*, 2 R. I. 320.

But independent of authority we think this must be so, for obvious reasons.   Nothing is more common in the ordinary course of business than the drawing of paper to the order of and in favor of one of the firm, either for reasons of convenience or because the discounting bank may sometimes, either in order to comply with some rule of its own or for some other reasons, prefer to have the paper payable to and endorsed by one member of the firm rather than by the firm itself.   And when such paper is endorsed *bona fide* and for value by a partner we are unable to see why such transfer is not equally as valid as the transfer of any other well-known class of commercial paper would be under the same circumstances.   In the case of *Smith* v. *Lusher, supra,* the custom of making firm paper in favor of a partner is referred to as one generally prevailing.   It was contended in argument that to give the partner's endorsement its legal effect would put it in the power of a creditor of an individual insolvent partner holding an invalid claim of such partner to secure payment out of the partnership assets *pari passu* with the general creditors of the firm, although such individual partner himself would have no standing for that purpose in Court.   But in answer to this suggestion it is sufficient to say that it necessarily follows if the appellant is a *bona fide* holder for value, his title and right to recover are not dependent upon the validity of the title of his endorser.   It often happens that an indorsee of commercial negotiable paper stands in a better position than his indorser, and hence the well-settled rule which prevails everywhere " that commercial paper having the quality of negotiability is privileged, and such of it as belongs to the class of bills and notes may be

transferred in such manner as to give the endorsee a better right than the party making the transfer."

That the appellant is a *bona fide* holder, except in so far as the nature of the paper, and the fact that he held it as collateral security for a pre-existing debt precluded him from standing in such position, was not denied, for there is no evidence whatever of any actual fraud in the transaction between the appellant and Yessler.   It has been repeatedly held in this State and elsewhere that mere negligence on the part of the endorsee in failing to discover the fraud or bad faith, if there be any, will not be sufficient to defeat his title.   "The question is one of fraud and bad faith on the part of the taker of the note, and that is as susceptible of proof by circumstances as by direct proof." *Bank* v. *Hooper*, 47 Md. 88;  *Williams* v. *Huntington*, 68 Md. 590.

We have already said that in our opinion the nature or form of the paper affords no sufficient reason for imputing bad faith to the appellant, and we have found no evidence in the case of any actual fraud on his part.  It only remains therefore briefly to consider the third and last ground of exception, namely, that the note, having been endorsed for and in consideration of a pre-existing debt, was not obtained by the appellant in the ordinary course of business.   But since the case of *Maitland* v. *Bank*, 40 Md. 540, the contrary has been settled law in this State.   In *Swift* v. *Tyson*, 16 Peters, 1, it was held, STORY, J., delivering the opinion, "we are prepared to say that receiving it (the note) in payment of or as security for a pre-existing debt is according to the known, usual course of trade and business."   And this view was expressly adopted by this Court in *Maitland's case*, *supra*.

Finally it appears from the undisputed evidence that the note in question was transferred to the appellant as collateral security, and it therefore follows that he is entitled to share in the distribution of partnership assets equally with the other general creditors to an amount not greater than the debt with interest which was secured by the $2,000

note.  *Daniel on Negotiable Instruments*, sec. 832*a*, and authorities there cited—also *Huntington and Williams*, 68 Md. 605—the note held as collateral being taken as the basis of calculation of the amount of the dividend to be allowed the appellant.

> *Order reversed and cause remanded for further proceedings in accordance with this opinion.*

(Decided December 3rd, 1896).