# HOWARD CASSARD use of CHARLES H. OEHM *vs.* McGLANNAN and HALL.

### *Parol Evidence Inadmissible to Vary Written Contract.*

By a contract in writing, plaintiff agreed to sell and defendant
to buy, a stock of goods and the good will of a business, for
the sum of ten thousand dollars. By a subsequent clause
of the contract, the defendant agreed to pay off liens then
existing upon the business. Defendant paid part of the
purchase money. In an action to recover the balance, *Held,*
that according to the plain language of the contract, the
liens were to be discharged by the purchaser in addition to
the payment of the sum mentioned as the purchase money
and that, consequently, parol evidence is not admissible to
vary the terms of the writing, by showing an agreement
that the amount of the liens was to be taken as part of the
purchase money.

Appeal from the Superior Court of Baltimore City
(Ritchie, J.). The contract sued on after the intro-
ductory paragraph quoted in the opinion of the Court
provided as follows: " Now, therefore, this agreement
witnesseth, that whereas, the said Howard Cassard is the
sole owner of the said recipes and trade-marks of the
powders, liniments and medicines known as " Stone-
braker's Medicines " (a list of the same being hereto
annexed as part of this agreement), and has agreed to
sell the same to the said Alexis M. McGlannan and
Frank M. Hall, trading as aforesaid, for the sum of ten
thousand dollars, upon the terms and conditions herein-
after set forth. Now, therefore, the said Alexis W.
McGlannan and Frank M. Hall, trading as aforesaid,
do hereby purchase all the said recipes and trade-marks
of the said medicines, and the sole right to manufacture
the same, and to use the said trade-marks."

The instructions of the Court to the jury were as fol-
lows: 1st. The Court strikes out all parol evidence,
taken subject to exception, offered to vary or contradict

the written contract sued on, but leaves in all evidence of surrounding circumstances and of admissions by plaintiff calculated to aid the Court in determining whether, under the true construction of said contract, the said twelve hundred dollars ($1,200) was to be taken as part of the said ten thousand dollars ($10,000) or not.

2d. It appearing from the admissions of the plaintiff on the stand, that at the time of the execution of the contract sued on, the defendants paid eight thousand eight hundred dollars ($8,800) in cash, and, with the consent of the plaintiff, withheld twelve hundred dollars ($1,200), and that immediately thereafter the plaintiff took means to secure releases from the four daughters of Henry Stonebraker, in the sum of three hundred dollars ($300) each, and after he had secured such releases, demanded payment of the twelve hundred dollars ($1,200) withheld as aforesaid; and also, that he had no claim to the said twelve hundred dollars ($1,200), except upon the production of said releases, the jury is instructed that on the true construction of said contract the said twelve hundred dollars ($1,200) was to be taken as part of the consideration of ten thousand dollars ($10,000), and the plaintiff is not entitled to recover.

The cause was argued before McSHERRY, C. J., BRYAN, FOWLER, BRISCOE, ROBERTS, BOYD and PEARCE, JJ.

*Charles W. Field*, for the appellant.

*Alexander Preston* (with whom were *J. Alex. Preston* and *Robt. Ludlow Preston* on the brief), for the appellees.

ROBERTS, J., delivered the opinion of the Court.

The appeal in this case is from a judgment of the Superior Court of Baltimore City. The preliminary facts are sufficiently stated in the preamble to the contract, between the appellant and the appellees, dated May 23rd, 1894, and are as follows: " Whereas, Henry Stonebraker, deceased, did, by his last will and testa-

ment, dated the 17th day of February, 1877, give and bequeath to his two sons, John R. Stonebraker and Charles H. Stonebraker, all his recipes and trade-marks, with the sole right to use them in the manufacture and preparation of ' Stonebraker's Medicines '; and whereas, afterwards, the said Charles H. Stonebraker, by deed dated the 7th day of April, 1881, assigned all his right, title and interest in and to the said property, to the said John R. Stonebraker, and the said John R. Stonebraker upon the first day of July, 1885, assigned all his right, title and interest in and to said property to James J. Lamkin and Gerard Butke, and the said Gerard Butke afterwards assigned all his right, title and interest in and to said property to Howard Cassard, and the said James J. Lamkin, upon the 31st day of March, 1892, assigned to the said Howard Cassard, all his right, title and interest in and to the said property, whereby the said Howard Cassard became the sole owner of said property."

A subsequent clause of said contract reads: " And the said Alexis W. McGlannan and Frank M. Hall, trading as aforesaid, do hereby covenant, for themselves and their heirs, to pay Angelica E. Stonebraker the sum of five hundred dollars annually, in monthly payments, according to the provision in the will of Henry Stonebraker, requiring the said sum of five hundred dollars to be paid annually to the said Angelica E. Stonebraker, his wife, out of the profits derived from said ' Stonebraker's Medicines,' and also the sum of three hundred dollars ($300) to each of the four daughters of said Henry Stonebraker, or their assigns, after the death of the said Angelica E. Stonebraker."

At the time of the execution of said contract, and of the delivery of the property referred to therein, the appellant signed and delivered to the appellees, the following paper: " I, Howard Cassard, trading under the name and style of ' The Stonebraker Chemical Company of Baltimore City,' in the State of Maryland, in consideration of the. sum of ten thousand dollars ($10,000), paid me by Alexis W. McGlannan and Frank

M. Hall, do hereby bargain and sell to the said McGlannan and Hall, all the labels, stocks, fixtures, laboratory ware, good will, and the right to manufacture all of Stonebraker's medicines, now located at No. 517 West Baltimore Street in said City and State, and now occupied by the Stonebraker Chemical Company," which was duly executed and acknowledged before a justice of the peace. As stated the consideration of this sale and purchase is the sum of ten thousand dollars. It is conceded that but $8,800 of this consideration has been paid the appellant and this action has been brought to recover the balance, which is the sum of $1,200. It will be seen from what we have already said that the contract specifies a consideration of $10,000 in cash, and it nowhere appears from this record that there was any other or different consideration mentioned or referred to in the contract. This controversy is entirely relieved from any question of want or failure of consideration or breach of warranty, or defect in quality or misrepresentation as to value. The fact that by the second clause of the contract the goods were to be sold to the appellees " for the sum of ten thousand dollars upon the terms and conditions hereinafter set forth," presents no difficulty, as the fourth clause of the contract, in express terms, provides that " the appellees shall pay to the said Angelica E. Stonebraker, widow of Henry Stonebraker, deceased, the sum of five hundred dollars annually, according to the terms of the will of her late husband, Henry Stonebraker, and also the sum of three hundred dollars to each of the four daughters of the said testator, or their assigns." No contract, such as the one we are now considering, could have reasonably been consummated, without provision being made for the discharge of the liens just mentioned created by the will of said testator. It is quite clear from the terms of the contract that the appellees were to pay to the said Angelica E. Stonebraker the amount provided for her by the said testator in his will, and it is none the less clear that the appellees were to make provision for the amounts respectively due to each of the four daughters of said tes-

tator, and as each of the daughters was entitled to the sum of three hundred dollars, the amount due to the said daughters was the gross sum of $1,200, which the appellees have not paid and is so much of the consideration of said contract as yet remains due and unpaid. It is true that the amounts due the four daughters or their assigns were not required to be paid until after the death of the said Angelica, yet there was nothing in said contract or in the provisions of the said will prohibiting the daughters or any of them from selling or assigning their legacies under the will to whomsoever they might think proper. And this is exactly what they did. In consideration of the fact that the daughters were not entitled to demand their money until after the death of their mother, the said Angelica, who is still living, the appellant paid to each of said daughters such sums as they had severally agreed upon in consideration of the execution and delivery to him of legal acquittances and releases for the legacies respectively due them under their father's will, which were to be satisfactory to the appellees or their counsel. The appellant having obtained the four releases and tendered the same to the appellees, they admitted that they were genuine and executed by the said daughters respectively. The releases are in proper form and constitute valid discharges of the appellant's liability for the payment of said legacies. These are the facts essential to a proper understanding of this controversy.

In the progress of the trial below a great deal of testimony was taken subject to exception, the tendency of which was to vary or contradict the written contract sued on, and which was subsequently stricken out, but the Court allowed to remain in all evidence of surrounding circumstances and of admissions by the appellant calculated to aid the Court in determining whether, under the true contruction of the contract sued on, the said twelve hundred dollars was to be taken as part of said ten thousand dollars or not. This is substantially the first instruction granted by the Court upon its own motion after having rejected each of the four prayers

of the appellant.    In this, we think, the Court has com-mitted error.    Not, however, in striking out testimony, the effect of which is " to alter, vary, add to, or supple-ment the written contract," but because the contract in itself is in express terms clear from any reasonable doubt as to its true meaning and does not require the admis-sion of evidence of the surrounding circumstances or of admissions of the appellant to aid the Court in ascer-taining the true construction of the contract.    Courts look with jealous care to the admissibility of such evi-dence because its effect is that it not infrequently tends to set up a new contract which is sometimes substituted for the old one.    Unless then the contract is involved in such uncertainty as to render its meaning doubtful, parol testimony ought not to be admitted.    Mr. Green-leaf in his work on Evidence, sec. 275, correctly presents the rule, which reads: " When parties have deliberately put their engagements into writing, in such terms as im-port a legal obligation, without any uncertainty as to the object or extent of such engagement, it is conclu-sively presumed that the whole engagement of the par-ties, and the extent and manner of their undertaking was reduced to writing; and all oral testimony of a previous *colloquium* between the parties, or of conversation or declarations at the time when it was completed, or afterwards, as it would tend in many instances to sub-stitute a new and different contract for the one which was really agreed upon, to the prejudice, possibly, of one of the parties, is rejected."    As bearing on this subject are the cases of *Penniman* v. *Winner*, 54 Md. 132-3; *Timms* v. *Shannon*, 19 Md. 296; *Badart* v. *Foulon*, 80 Md. 590-1.    It is plainly the duty of the Court to interpret the contract as written, but if testimony be admitted because it is necessary to aid in the construction of the contract, then it becomes a question which must be submitted to the jury under proper instructions of the Court.

The second instruction granted by the Court we think liable to much the same criticism, because the appellant's admissions were unnecessary in aid of the true construc-

tion of the contract and should not have been allowed to play any part in the determination of its meaning, as by its express terms, it is free of any difficulty in its interpretation.   There is, therefore, in the construction of this contract, no need to resort to oral testimony for the reasons already stated.

It is not necessary to pursue this inquiry any further and we therefore conclude this opinion.   It follows from what we have said that the Court below committed error in rejecting the appellant's first, second and third prayers, and also in the granting of its own two instructions. The judgment below will therefore be reversed with costs.

> *Judgment reversed with costs and cause remanded that another trial may be had.*

(Decided June 29th, 1898.)