## OMAR D. CROTHERS v. NATIONAL BANK OF CHESAPEAKE CITY.

[No. 11, January Term, 1930.]

588

*Decided March 12th, 1930.*

The cause was argued before BOND, C. J., PATTISON, URNER, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Isaac Lobe Straus* and *Avrum K. Rifman,* with whom was *Henry A. Warburton* on the brief, for the appellant.

*Albert D. Mackey* and *Robert H. Archer, Jr.,* with whom were *Charles Carroll, Jr.,* and *William Pepper Constable* on the brief, for the appellee.

PARKE, J., delivered the opinion of the Court.

On April 15th, 1922, the National Bank of Chesapeake City, a body corporate of the United States, brought an

action at law against Omar D. Crothers on a writing obligatory dated February 3rd, 1922, by which the defendant promised to pay to one J. Groome Steele the sum of $3,000 ninety days after date, for value received, with a waiver of protest and notice of nonpayment, and an agreement to pay the usual commissions for collection. The single bill authorized any attorney of record to appear in any court and before, at, or after its maturity, to confess judgment on the obligation, with costs, a waiver of all exemptions and a right to issue an immediate execution for the amount of the judgment, interest, and costs. The payee transferred under his seal the instrument to the plaintiff on its date; and by the terms of the transfer waived presentment, protest, demand, and notice of nonpayment, and guaranteed the payment of the obligation at any time before, at, or after its maturity, and also agreed that all its provisions should apply to and bind the endorser as though he were the maker. In pursuance of the power a judgment by confession on the day the action was begun was entered against the obligor for the sum of $3,181, with interest from May 4th, 1922. The defendant took no action until June 13th, 1929, when he filed a motion to strike out the judgment. The matter was heard by a full bench, and from the order refusing to strike out the judgment the defendant has appealed.

The cause of action upon which the judgment was entered is not the original obligation which was executed and delivered about December 3rd, 1921, for the same principal amount, payable by the defendant to J. Groome Steele sixty days after date, and by him transferred to the plaintiff. The record does not contain this original obligation, and does not disclose whether it was under seal or had a power to confess judgment, so it is impossible to learn from the record if the substituted or renewal obligation on which judgment was obtained was, except as to date and maturity, identical with the original obligation. The parties, however, appear to have regarded the second instrument as being similar in all material respects, and it will be so considered on this appeal.

Various reasons for striking out the judgment were assigned in the motion, but the testimony presents but two substantial contentions. The first is that the writing obligatory was without consideration, since it was accommodation paper, and the defendant was the accommodation maker and the plaintiff was the party accommodated. The second of these contentions is that the defendant executed and delivered the instrument upon a prior or contemporaneous parol agreement with the obligee and his transferee that the obligor was under no obligation to pay, and the instrument would not be enforced against the obligor.

1. The negotiable character of the cause of action was not affected by the fact that it was under seal. Code, art. 13, sec. 25 (4); *Citizens' National Bank v. Custis,* 153 Md. 238, 155 Md. 175. Nor would the instrument have had its negotiability destroyed by a provision authorizing a confession of judgment if the instrument were not paid at maturity, but its negotiability is lost by the authorization of a judgment by confession before, at, or after maturity, and the immediate issue of an execution for the amount of the judgment, with interest and costs. Code, art. 13, sec. 24 (2); *Edelen v. First National Bank,* 139 Md. 422, 424, 425; *Johnson v. Phillips,* 143 Md. 16, 21, 22. The fact that the cause of action is not a negotiable instrument does not prevent the rights and liabilities of the parties being ascertained from the applicable principles relative to accommodation paper, as was held in *Nussear v. Hazard,* 148 Md. 345, 351-353. While accommodation paper is usually negotiable, yet a non-negotiable instrument may be used as a means of accommodation. When a party lends his credit for the purpose of procuring credit for the benefit of another, without receiving any part of the consideration himself, the instrument of writing employed, whatever the form it assumes, has all the necessary elements, so far at least as consideration is concerned, required by accommodation paper, and is within the meaning of that term. *Farrar v. New York Bank,* 90 Ga. 331, 334; *Miller v. Larned,* 103 Ill. 562, 569.

Nor does the use of the seal, which imports consideration,

deny to the defendant the opportunity to have the judgment struck out to let in the defense of a failure of consideration, because such a defense may be made at law by way of equitable defense since the enactment of the statute permitting such a plea at law. Code, art. 75, secs. 91-93; 1 *Poe, Pl. & Pr.,* sec. 143A. Consequently, there was no procedural difficulty preventing the defendant from showing on his motion a failure of necessary consideration, and, in order to weigh the proof on this first inquiry it will be necessary to keep in mind the principles underlying accommodation paper.

If a party has signed the instrument as maker without receiving value therefor, and for the purpose of lending his name to some other person, he is an accommodation maker, and is liable on the instrument to a holder for value, notwithstanding such holder at the time of taking the instrument knew him to be only an accommodation party. *Jamesson v. Citizens' Bank,* 130 Md. 75, 79; *Yates v. Donaldson,* 5 Md. 389; *Maitland v. Citizens' National Bank,* 40 Md. 540; *Black v. First Nat. Bank,* 96 Md. 339; *Schwartz & Sons v. Wilmer,* 90 Md. 136, 141; Code, art. 13, sec. 48. This is the law with respect to negotiable instruments and, when the circumstances are examined, it is clear that the three parties concerned with the non-negotiable instrument on this record stand in the relation of an accommodating obligor, an accommodated obligee, and a transferee of the writing obligatory for a valuable consideration. *Maitland v. Citizens' National Bank,* 40 Md. 540, 561, 562; *Buchanan v. Savings Institution,* 84 Md. 430, 436. The obligee had overdrawn his account with the plaintiff, and was unable to pay his indebtedness thus incurred. He had large assets and heavy liabilities by reason of current speculation in grain, and his hope of being able to meet his obligations lay in his creditor granting him an extension of time in anticipation of a rise in the market price of grain. In order to meet the overdraft and to gain the desired extension, the obligee obtained from the obligor in December, 1921, his obligation for $3,000, payable to the obligee sixty days after date, and the obligee immediately transferred the paper to the plaintiff in accordance

with the agreement of the three parties. The obligor received no direct consideration for his name, but loaned his credit for the benefit or accommodation of the obligee, who was expected to pay to the transferee the principal and interest of the instrument. The transferee was a holder for value, since the paper was taken in discharge of the debt between the obligee and his transferee that subsisted at the time of the execution of the instrument; and a signature for accommodation is supported by a consideration moving to the accommodated party. *Swift v. Tyson,* 16 Pet. (U. S.) 1, 14; *Neal v. Wilson,* 213 Mass. 336; *Lehrenkrauss v. Bonnell,* 199 N. Y. 240.

Thus the execution and delivery of the accommodation paper and its immediate transfer to the plaintiff were but successive stages in the full performance of an antecedent contract between the three parties, whereby, in consideration of the obligor lending his credit to the obligee by the writing obligatory and the delivery of this instrument to the plaintiff, the obligee's subsisting debt to the plaintiff for the overdraft would be discharged and a further period of sixty days would be obtained in which to make payment in money. The maker of the original obligation, therefore, has no equities against the transferee, and is in no position to defeat the action of the transferee on the instrument because the obligor, who, as to the obligee, stands in the relation of a surety, received no consideration from the obligee for his promise. *Nusseur v. Hazard,* 148 Md. 352, 353.

Since the accommodating party lends his credit by request to the party accommodated upon the assumption that the latter will discharge the debt when due, it is an implied term of this agreement that the party accommodated cannot acquire any right of action against the accommodating party. Moreover, as between these two there is no consideration. It is the defendant's contention that the accommodated party is the plaintiff, and, therefore, the plaintiff has no enforceable demand. The complete answer to this position is that the obligor did not execute and deliver the writing obligatory to enable the bank to raise money or extinguish its debt by a

loan of the obligor's credit. On the contrary, it was the obligee or debtor to whom the obligor lent his credit in order to enable the obligee to satisfy the debt of the obligee to the bank on an overdraft. If the obligor pay the debt on the single bill, he has no action against the bank, but he can recover indemnity against the obligee as the party accommodated, because of the failure of the obligee to protect the obligor from the liability assumed at the obligee's request and for his benefit. In the analogous case of *Neal v. Wilson,* 213 Mass. 336, it was argued that the bank was the party for whose accommodation the instrument was given by the defendant to the bank, at the solicitation of the cashier, to cover the overdraft of a depositor. The court denied this contention, saying: "But even if the note was given at the cashier's solicitation, it was confessedly given to be passed to the credit of Pearson's overdrawn account in order to make the account whole. That is to say it was given for the accommodation of Pearson, who was the debtor and not for the accommodation of the bank, which was the creditor." And again in *Thom v. Kibbee,* 62 N. J. L. 753, it was held that a promissory note given by the maker to the payee, at the request of a third person, to enable the payee to discharge a debt due to the latter, is, in a legal sense, made for the accommodation of the payee, and not of his creditor. From these considerations, it is concluded that the defense of no consideration is not available to the obligor.

2. The second proposition advanced by the defendant is that he can defeat the action by evidence of a prior or contemporaneous parol agreement of the bank with the defendant and the obligee that the writing obligatory was to be paid by the obligee for whose accommodation it was drawn and who, by his enforcement under seal, had bound himself as the obligor himself was bound (*Johnson v. Phillips,* 143 Md. 22, 23), and that the obligor would not incur any liability whatsoever nor be subject to any action by the execution and delivery of the writing obligatory.

At the hearing on the motion the obligor and defendant

offered testimony tending to show such a parol agreement, but this defense could not be proved when lying in parol. The writing obligatory was executed and delivered by the defendant, and the proposed defense runs counter to the terms of the written contract, and is a complete nullification of the explicit covenants of the obligor. The parties to the contract, after a preliminary oral negotiation, reduced their agreement to writing for the purpose of embodying their contract in its final form. On its face the contract was complete, and the intention of the parties that the obligor was bound to pay the sum named when and as stipulated is unequivocally expressed in the writing. In addition, the obligor agreed that, if he defaulted, he would pay the usual commissions for collection, and that his obligations could at any time be put in the form of a judgment by confession, which would immediately be collectible by execution, with a waiver of all exemptions. The endorsement under seal on the back of the instrument by the obligee guaranteed the payment of the obligation at any time before, at, or after maturity, and agreed that all its provisions should apply to and bind the guarantor as though he was a maker. It is an irresistible implication that a party would not covenant to pay $3,000 and to authorize a judgment by confession therefor, unless he intended to pay and to have his obligation enforced. The paper writing, consequently, irrefutably established that the parties bound by its terms had, so far as the transferee or the assignee of the single bill is concerned, considered by whom the debt was to be paid, the consequences of a default in its payment, and the summary procedure for its collection; and so the writing, with respect to the transferee or assignee of the document, was a complete integration of the agreement of the obligor and obligee and guarantor, with respect to those matters with which the paper expressly dealt, that precludes the introduction of any prior or contemporaneous oral agreement to vary the terms of the writing obligatory as against its transferee. The sound doctrine is that parol testimony is not admissible to change the clear and precise

terms of an executed, delivered, and operative written contract which was designed to be the repository and evidence of the final intention of the parties. *Penrose v. Canton Nat. Bank,* 147 Md. 200; *Black v. First Nat. Bank,* 96 Md. 399, 414-418; *Southern etc. Advertising Co. v. Metropole Shoe Mfg. Co.,* 91 Md. 61, 67-69; *McSherry v. Brooks,* 46 Md. 103, 118; *Neal v. Wilson,* 213 Mass. 336; *Davis v. Randall,* 115 Mass. 547; *Wright v. Morse,* 9 Gray (Mass.) 337; *Gerli v. Nat. Mill Supply Co.,* 78 N. J. L. 1; *Grannis v. Stevens,* 216 N. Y. 583, 217 N. Y. 664; *Alexander v. Chevalier,* 98 Vt. 230; *First Nat. Bank of Greencastle v. Baer,* 277 Pa. St. 184; *Abrey v. Crux,* L. R. 5 C. P. 37; 2 *Williston on Contracts,* sec. 644, pp. 1247-1250. See collection of cases in annotation in 20 *A. L. R.* 490-498; *Badart v. Foulon,* 80 Md. 591; *Cassard v. McGlennan,* 88 Md. 173.

The cases cited involve the application of the parol evidence rule to unsealed instruments, but *a fortiori* the rule has a stricter application to specialties. *Lazear v. Nat. Union Bank,* 52 Md. 78, 119; *Beall v. Greenwade's Admrs.,* 9 Md. 185, 193; 5 *Wigmore on Evidence* (2nd Ed.), secs. 2435, 2444 (3). If the accommodation party had been unwilling to lend his credit, he should not have executed the specialty. If his covenant to pay was conditioned on no action being brought against him on the obligation, he should have so nominated in the bond. He covenanted to do one thing, and he now seeks to incorporate in his written and sealed contract an incongruous parol agreement which is so antagonistic to the written instrument as to deny and nullify its plain and positive terms. Under the circumstances of this record, the established principles of evidence bar the introduction of such testimony.

Having failed to show that he has a meritorious and substantial defense to the cause of action upon which judgment was entered by confession against the defendant, the order of the lower court dismissing his motion will be affirmed. *Denton National Bank v. Lynch,* 155 Md. 333, 338, 339; *Keiner v. Commerce Trust Co.,* 154 Md. 366, 370, 371.

*Order affirmed, with costs.*