JAMES S. NUSSEAR, JR., *vs.* LOUIS A. HAZARD
ET AL.

*Review on Appeal—Negotiability of Note—Accommodation*
*Maker.*

In an action on a note, the exclusion of a question sought to
be asked one of the payees, whether he ever hypothecated any
of the collateral which he held for the note, *held* harmless, it
not being contended that the payees received for the sale of
collateral anything not credited on the note, nor that they
could not have returned the collateral if the note had been paid
at maturity.                                              p. 349

The appellate court cannot review the action of the lower
court in modifying appellant's prayers, if the record does not
show how they were modified or in what form they were origi-
nally offered.                                            p. 350

In reviewing the action of the lower court in refusing defend-
ant's prayer, the appellate court necessarily assumes the truth

of such evidence as tends to support the plaintiff's claim, together with such inferences as may naturally and legitimately be drawn therefrom.                                                    p. 350

A note which contained an agreement that it should be secured by a subsequent pledge or transfer of property "in accordance with an agreement" between the payees and the maker, as security "both to the said payees and the indorser," *held* not a negotiable instrument, Code, art. 13, sec. 24, providing that an instrument containing a promise to do anything in addition to the payment of money is not negotiable, and section 20 of the same article providing that, to be negotiable, an instrument must contain an unconditional promise to pay a sum certain in money, and the amount which the so called indorser, who was properly an accommodation maker, might be called upon to pay, being uncertain, as dependent on the amount realized from the collateral.                                                    p. 351

There can be, technically speaking, no indorsement of non-negotiable paper.                                                    p. 352

One who wrote his name across the back of a non-negotiable note before it was delivered, for the apparent purpose of lending additional security to the payees for the accommodation of the maker, must be regarded as a guarantor or as an accommodation maker, presumably the latter, in the absence of evidence that he was a guarantor.                                                    p. 353

A person who wrote his name on the back of another's non-negotiable note, before delivery thereof, was not, as a matter of law, to be regarded as a guarantor of the note rather than an accommodation maker, merely because the signer of the note had agreed to pledge as collateral another note, "signed" by that person.                                                    p. 353

An accommodation maker of a note is not discharged by an extension of the time, granted by the payee to the principal, even where the payee knows that he is an accommodation maker.
                                                    p. 353

A joint maker of a note, though he merely wrote his name on the back of the note for the purpose of accommodation, is not entitled to demand and notice as an indorser, since his obligation to pay is primary.                                                    p. 353

*Decided May 6th, 1925.*

Md.]

Appeal from the Court of Common Pleas (SYMING-TON, J.).

Action by Louis A. Hazard and William Scheffenacker against James S. Nussear, Jr. From a judgment for plaintiffs, defendant appeals. Affirmed.

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, PARKE, and WALSH, JJ.

*Richard M. Duvall,* with whom were *Duvall, Baldwin & Bosley* on the brief, for the appellant.

*Abraham Rosenthal,* for the appellees.

OFFUTT, J., delivered the opinion of the Court.

On or about April 18th, 1922, James G. Pugh and Stuart I. Whitmarsh, wishing to borrow $10,000 to finance a coal operation, applied to William Scheffenacker and Louis A. Hazard for the loan. Scheffenacker and Hazard agreed to lend the money, and on that day Pugh and Whitmarsh each executed to them a promissory note in the following form:

"Baltimore, Md., April 18th, 1922.

"$5,000.00

"Four months after date I promise to pay to Louis A Hazard and William Scheffenacker, or order, five thousand and 00/100 dollars, value received.

"Note:—It is understood and agreed that this note is intended to be secured by a second mortgage on the home of the maker, on Melanchthon Avenue, Lutherville, Maryland, subject to a first mortgage of $4,500, and by a deed for and title to the Baum Coal Mine, at Jennings, Garrett County, Maryland, and also by a lease of 113 acres of coal nearby to be hereafter executed by the Morgart Coal Mining Corporation to said maker or to his nominees, in accordance with an agreement between said payees and said maker and others bearing even date herewith, as security both to the said payees, and the endorser hereof, for the payment hereof, and that in case said coal properties

are transferred to a corporation in exchange for its
capital stock, the said stock is to be taken and held by
said payees in lieu of said coal properties as such
security; said properties being particularly mentioned
and referred to in said agreement.

(Signed)    James C. Pugh.

"Endorsed by Jas. S. Nussear, Jr.

"(Due Friday, Aug. 18, 1922.)"

On the same day Pugh, Whitmarsh and the appellees exe-
cuted the agreement referred to in the notes, under which the
appellees agreed to borrow on security owned by them $12,-
000, of which $10,000 was to be by them loaned to Pugh
and Whitmarsh, and $2,000 paid by them as a bonus for
securing the loan. The $10,000 was to be loaned to Whit-
marsh and Pugh severally, $5,000 to each, and the loan to
Pugh was to be secured in the following manner:

"That the said James G. Pugh, one of the parties
of the second part, to more fully secure the repayment
of the indebtedness set forth in paragraph two, shall
pledge as collateral a four months promissory note,
dated April 18th, 1922, signed by James S. Nussear,
Jr., for five thousand dollars, and as additional col-
lateral to execute a second mortgage upon the resi-
dence of James G. Pugh, at Lutherville, Maryland,
and also the right, title, and interest of the said James
G. Pugh to all coal properties in Garrett County,
Maryland."

As further evidence of the loan it was agreed:

"That the said parties of the second part shall exe-
cute their four promissory notes each for three thou-
sand ($3,000) dollars each payable to the order of the
said parties of the first part, each dated April 19th,
1922, and payable three-four-five and six months re-
spectively from the 19th day of April, 1922, being the
sum of ten thousand ($10,000) dollars indebtedness
set forth in paragraph two hereof and the sum of two
thousand ($2,000) dollars, the bonus payable for the
obtaining of the net sum of ten thousand ($10,000)
dollars by the said parties of the first part."

The agreement also provided for the pledging and redemption of other collateral and for the transfer by Pugh to the appellees of the stock owned by him of a corporation to be formed thereafter to be held by them pending the loan.

The note referred to in that agreement, and set out above, was executed by Pugh, endorsed by James S. Nussear, Jr., and delivered to the appellees.

There was evidence tending to show that the mortgage referred to in that note and agreement was not executed until August 8th, 1922, and whether when it was executed it referred to the note endorsed by Nussear, or whether a second mortgage note was executed at the time the mortgage was executed, is not shown by the record.

When the note endorsed by the appellant in this case matured, the holders, who were also the payees, did not present it for payment to the maker, Pugh, but presented it, according to their testimony, to the "endorser." They excused their failure to present it to the maker on two grounds: First, they said that Pugh was out of the State on the day it matured, and, second, that he had an office with them, and that the note was in the safe at that office when it matured. It was not paid either by the maker or the "endorser," and this suit was brought by the holders, the appellees here, to recover the balance due on it. The case was tried before a jury in the Court of Common Pleas of Baltimore City, and the verdict and judgment being for the plaintiffs, the defendants appealed.

The record contains two exceptions. The first is said to be based on a ruling of the trial court in refusing to permit Scheffenacker, one of the appellees, to be asked on cross-examination whether he ever hypothecated any of the collateral which he held as security for the loan. No such ruling appears in the record, but if we assume that the question is properly before us, we do not see how the appellant could have been injured by the supposed ruling, for it is not contended that the appellees received anything for the sale of collateral which was not credited on the note, nor that they

could not have returned the collateral if the note had been paid at maturity.

The second exception relates to the court's rulings on the prayers. The defendant offered five prayers, the first of which was refused, while the remaining four were modified by the court and granted. Although the exception challenges the propriety of the court's action in modifying these prayers, no point was made of that in the oral argument or the brief in this Court, and indeed we are not able to learn definitely from the record how those prayers were modified by the court, or in what form they were originally offered, and we could not, therefore, say that the trial court acted improperly in modifying them.

The only question before us, therefore, is the propriety of the court's action in refusing the appellant's first prayer, and in considering that question we will necessarily assume the truth of such evidence as tends to support the plaintiff's claim, together with such inferences as may naturally and legitimately be drawn therefrom.

That prayer is based upon the theory that the note sued on is a negotiable instrument, but that, whether negotiable or not, the holders could not proceed against the "endorser" until they had at least demanded payment of the maker, and that since that was not done in this case, the plaintiffs were not entitled to recover, but that even if a demand was not necessary, nevertheless the "endorser" is not liable because the payees, who are also the holders, extended the time of payment of the note without the knowledge or consent of the endorser, and these questions we will consider in the order in which they have been stated.

It has been held that the mere fact that a note is secured by mortgage does not necessarily destroy its negotiability (8 *C. J.* 200), although it is not clear how such a note could be considered negotiable in this State, because of the statutory requirements regulating the assignment of mortgages, considered in connection with section 25 of article 66, C. P. G. L. of Md., which provides that the title to all promissory

notes secured by mortgage shall be conclusively presumed to
be in the record holder of the mortgage, and that payment
of the note shall be presumed where the mortgage is regularly
released. The statute last referred to makes the mortgage
and the mortgage note integral parts of the same transaction,
and introduces into the note the uncertainties as to time of
payment, the amount payable etc. often incident to the or-
dinary mortgage.

But the note under consideration is, strictly speaking, not
a mortgage note. It does state that it is "intended" to be
secured by mortgage, but according to the testimony of the
plaintiffs in the case, no mortgage was ever executed to secure
it until a short time before it matured, and it does not appear
that the mortgage which was executed then referred to this
note. It does, however, contain an agreement, which from
its location must be regarded as a part of it, that it is to be
secured by the pledge or transfer of certain real and personal
property "in accordance with an agreement" between the
payees and the maker, as security "both to the said payees,
and the endorser," and by the terms of the agreement re-
ferred to in the note, the note to be indorsed by Mr. Nussear
was apparently to be entirely independent of and in addition
to the second mortgage on Mr. Pugh's property in Lutherville.
By the language of the note itself, therefore, it appears that
the note is incomplete; that it was intended to depend upon
the terms of a mortgage to be executed at some future time,
both for the security of the contemplated "endorser," Mr.
Nussear, who was for reasons stated below in our opinion an
accommodation maker, and the payees. The amount which
the payees might under its terms demand of the maker was
indeed fixed and definite, but the amount which the "en-
dorser" might be called upon to pay, was obviously uncertain,
since it would necessarily depend, in the event of the maker's
default, on the amount realized from the securities pledged
as collateral. Whether therefore it be regarded as a part of
the original transaction under which Pugh agreed to give the
appellees a second mortgage on his property, or whether that
mortgage is to be regarded as merely collateral to secure the

payment of the note, it cannot be considered a negotiable instrument, since in either case it requires some further act on the part of the maker to complete it. It obliges him to do several things in addition to paying money, that is, it requires him (1) to execute a mortgage on his home, (2) to execute a deed for the Baum Coal Mine, and (3) to have a lease for 113 acres of coal land executed by the Mogart Coal Company in accordance with the terms of an agreement which contemplates the formation of a corporation by the maker of this note and the payees, the pledge of its stock, and the transfer of their coal property to it. Section 24, article 13, C. P. G. L. of Md. provides that an instrument containing a promise to do anything in addition to the payment of money is not negotiable, and section 20 of the same article provides that an instrument to be negotiable must contain an unconditional promise to pay a sum certain in money.

This is not a case in which a note is secured by existing collateral pledged simultaneously with the execution or delivery of the note, such as is contemplated by section 24 of the same article, but one in which collateral is to be pledged at some future time, the terms of the pledge or mortgage being wholly uncertain and indefinite. We cannot under such circumstances, under the statute cited above, consider the note under consideration a negotiable instrument, as that term is understood in the law merchant, but it is in our opinion a mere non-negotiable contract. 8 *C. J.* 125-127.

The next question, assuming that this is a non-negotiable instrument, is, what are the relative rights of the holders and the indorser thereof with respect (1) to status, (2) to notice and demand, and (3) to any extension of the time of payment. In considering these questions the first thing to be determined is the status of the appellant. He is referred to in the pleadings and in the briefs as an "endorser," but obviously he is not a technical endorser, because strictly speaking there can be no "endorsement" of non-negotiable paper. Nor can he be regarded as an assignor. The note was not payable to him, he never had title to it, and he could not assign what he never possessed and never owned. He wrote

his name across the back of the note before it was delivered, for the apparent purpose of lending additional security to the payees for the accommodation of the maker, and he must therefore be regarded as a guarantor or as an accommodation maker, for he could not have been anything else. In the absence of evidence of an agreement to the contrary, he would be presumed to be a maker (*Keyser v. Warfield*, 103 Md. 165; *Keyser v. Warfield,* 100 Md. 72), and while there is possibly evidence in the case from which it might be inferred that he signed as a guarantor, it cannot be regarded as conclusive of that fact, and at most it only permits, but certainly does not compel, that inference. There was no oral testimony upon the point at all, and the only evidence which could refer to it is in the contract between Pugh and Whitmarsh on the one hand and the appellees on the other, where it was agreed that Pugh should pledge as collateral a four months promissory note "signed" by the appellant. It is unnecessary to decide now whether there might be a possible inference from that expression and the facts of the case that Nussear intended to guarantee the payment of the note, for obviously that evidence was not sufficient to justify the court in holding as a matter of law that he was a guarantor and not a maker.

As a joint maker the appellant was not entitled to demand and notice as an endorser, since his obligation to pay was primary, nor do we think that he was discharged by the act of the payees in extending the time of payment of the note. He was clearly an accommodation maker, and it has long been the rule in this State that an accommodation maker is not discharged by an extension of the time, granted by the payee to the principal, even where the payee knows that he is an accommodation maker. *Yates v. Donaldson,* 5 Md. 401 *et seq.; Vandeford v. Farmer's Bank,* 105 Md. 164; *Jamesson v. Citizens' Bank,* 130 Md. 79 *et seq.*

Since there was proof in the case that Nussear executed the note as an accommodation maker, and since the proof fails to show as a matter of law that the liability which he thereby incurred has been discharged, there was in our opinion no

error in the act of the trial court in refusing the defendant's first prayer, and since the propriety of its rulings in reference to the other prayers is not presented for our consideration by the record in this case, it follows that the judgment appealed from will be affirmed.

*Judgment affirmed, with costs.*