LEBRUN ET AL. *v.* PROSISE, INDIVIDUALLY AND AS TRUSTEE, ET AL.

[No. 121, October Term, 1950.]

468

*Decided March 21, 1951.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, GRASON, HENDERSON and MARKELL, JJ.

*Mark P. Friedlander*, with whom were *Meatyard & Carlin* on the brief, for the appellants.

*Ralph Luttrell*, with whom were *William B. Wheeler* and *Edward L. Foster* on the brief, for the appellees.

MARKELL, J., delivered the opinion of the Court.

This is an appeal by plaintiffs from a decree declaring a deed of trust from plaintiffs to defendant trustees "null and void, and of no force and effect", but establishing "an equitable lien" in favor of defendant Marcey against the property mentioned in the deed of trust, owned by plaintiffs as tenants by the entireties, to secure the debt evidenced by a note for $15,000, mentioned in the deed of trust as secured thereby.

Arlington Trust Company, of Arlington, Va., had been lending large sums of money to plaintiff George K. LeBrun while he and one Saunders, under the name

Standard Supply Company, had been engaged in the manufacture of boxes for the United States. While indebted to the trust company in a large amount, LeBrun became the distributor for a furnace manufacturer, and defendant Prosise, as vice-president and treasurer of the trust company, financed the furnace transactions for him. When a carload of furnaces, costing from $8,000 to $10,000, came in, LeBrun might sell some from the car, and the trust company would advance the difference to pay the "C.O.D. sight draft." Furnaces not sold from the car would be put in a warehouse and as each was sold, the price was paid to the trust company and Le-Brun's account was credited with the amount received. LeBrun explains that, "In view of the fact that I owed the bank money, Mr. Prosise was most anxious for me to make money so that I would be able to pay the bank back, as he knew I couldn't operate without financial help." The trust company eventually charged off as uncollectible, over $50,000 of LeBrun's obligations. Le-Brun says "the bank sold the furnaces themselves", without crediting anything from the $15,000 note or deed of trust against the furnace account, but leaving a balance (the amount not stated) due on the furnace account, for which he gave a new note. Mrs. LeBrun, before March 4, 1947, was not obligated on any of her husband's indebtedness to the trust company.

LeBrun says Prosise told him the bank officials and the bank examiners were after him to get the furnaces out of the warehouse; about a month later Prosise told him that pressure was very great on him, due to the fact that he had no collateral on the furnaces. Prosise "wanted me to put up some sort of collateral to enter into the jacket and show that we did have collateral on these furnaces. He asked if I would mind giving a collateral note on my wife's signature and mine and as soon as the furnaces were disposed of he would return these papers to me."

After this conversation Prosise on March 3, 1947 wrote to defendant Thomas, then attorney, now president, of

the trust company, asking him to prepare the deed of trust now in question. The deed of trust and the note were immediately prepared and were dated March 4, 1947. The note, purporting to be made at Arlington County Court House, Virginia, was for $15,000, payable one year after date to the order of the trust company, with interest at four per cent payable semi-annually. LeBrun took the note and deed of trust home, had them signed by his wife, and took them back to a clerk at the trust company. LeBrun says Prosise said "that this note * * * would not be recorded in view of the fact that he would not ask for my wife or myself to appear before a notary at his bank or any other notary." Plaintiffs' contention is that the note and deed of trust were given only as collateral to secure the furnace account. The deed of trust bears the signatures of two trust company clerks as witnesses to plaintiffs' signatures respectively, and a certificate of acknowledgment, by Mr. and Mrs. LeBrun, of a Virginia notary, Sherwood, then assistant-treasurer, now treasurer, of the trust company. The note bears a certificate of Sherwood that the note and deed had been signed in his presence. We agree with Judge Woodward "that the evidence clearly shows that Mrs. LeBrun never appeared before Mr. Sherwood, that he did not see her sign the note and neither did she acknowledge the deed of trust before him, as certified by him. The evidence further clearly shows that Jean Shelton did not witness the making of the signature of Mrs. LeBrun". The deed of trust, "with the purported acknowledgment", was recorded in Montgomery County on March 21, 1947. LeBrun says that after he discovered that the deed of trust had been recorded he asked Sherwood what right he had to certify the acknowledgment and Sherwood said he had done so at Prosise's request.

Most of our statement of facts has been adopted, substantially verbatim, from Judge Woodward's opinion, but with some little amplification. All of it, as adopted and as amplified, is based principally on plaintiffs' testimony. As all the testimony in this case was taken before

an examiner, we cannot shift to Judge Woodward any responsibility for any questions of veracity. If plaintiffs' testimony had not been corroborated and had been strongly controverted, we might hesitate to find that the certificate of acknowledgment was false, the note and deed of trust had been given only to secure the furnace account and the note was wrongfully sold by the trust company. But plaintiffs' testimony was corroborated and was not strongly controverted. Plaintiffs' third child had been born on February 20, 1947. Mrs. LeBrun had returned from the hospital on February 28th. On March 4th she was in bed, attended by a nurse and unable to leave the house. Prosise had been employed by the trust company for about thirty years, as vice-president and treasurer for three or four years, until October, 1948, when he "resigned" for "personal reasons" which he does not care to state. At different times he acted for or with the trust company, LeBrun or Marcey; his testimony shows that he deceived all three by false statements. He does not confirm, but refuses to deny, that the note was only to secure the furnace account; he "doesn't recall" that he took the deed of trust to Sherwood and asked him to certify the acknowledgment, he "could have." Sherwood says that to the best of his recollection plaintiffs did appear before him and acknowledge the deed of trust. "* * * I can't remember for sure". "I think so". "As I recall, it is customary for people making the acknowledgment to appear." The two clerks who "witnessed" plaintiffs' signatures apparently did not testify. Defendants' testimony is altogether too pitifully weak to be regarded as seriously controverting plaintiffs' testimony.

On March 27, 1947 the note was sold by the trust company to defendant Marcey, a director of the trust company, who paid $15,000 for it, under a representation by Prosise that it was a first trust note; in fact it was at best a second trust note on plaintiffs' house. The trust company continued to hold the note, for collection for Marcey. Two semi-annual interest installments on the

note, due September 4, 1947 and March 4, 1948, were paid by LeBrun on December 3, 1947 and July 10, 1948 respectively. The third, due September 4, 1948, was paid by Prosise on September 29, 1948.

The fourth installment being in default, Marcey, through the trustees, instituted foreclosure proceedings. The instant suit followed. Plaintiffs pray that foreclosure be enjoined, the deed of trust cancelled and "held for naught" and also that "any and all notes obtained by * * * Prosise from * * * plaintiffs * * * relating to [the] deed of trust be surrendered to this court for cancellation". The last prayer has not been specifically mentioned or referred to, in oral argument or in the briefs, but as the question whether Marcey is a holder in due course has been argued here and was decided below, we conclude that the last prayer is before us for decision.

LeBrun says that when he received a notice from the bank that he owed $300 interest he went to Prosise, who then for the first time told him that he had sold the note, but would not tell him to whom he had sold it. LeBrun says he consulted a lawyer, who advised him that the note was invalid and it was a case of fraud by the bank, but also advised him to pay the interest to avoid a sale of furnaces at a sacrifice by the bank. For the same reason he paid the second instalment, but after prolonged insistence he was shown the note and ascertained that it had been sold to Marcey. When a third instalment of interest became due, LeBrun refused to pay it, and Prosise told him he had paid it for him. Then or earlier LeBrun went to see Marcey and told him his full story about the note and deed of trust.

This deed of trust is like deeds of trust which, we understand, are generally used in Virginia, West Virginia, and the District of Columbia in lieu of mortgages and are not infrequently so used in Montgomery and Prince George's Counties and perhaps in other counties bordering on the Potomac. It is also similar to deeds of trust ordinarily executed by corporations to secure issues of negotiable or transferable bonds. For most purposes

any such deed of trust *is* a mortgage, *Manor Coal Co. v. Beckman,* 151 Md. 102, 115-116, 133 A. 893, and is subject to some (but not all) statutory provisions relating to mortgages. *Lewis v. Beale,* 162 Md. 18, 20, 158 A. 354, sales under mortgages, Code, Art. 66, secs. 6, 9. On the other hand, some statutory provisions distinguish between "mortgage" or "deed in the nature of a mortgage" and "deeds of trust in the nature of mortgages". *Eisinger Mill & Lumber Co. v. Dillion,* 159 Md. 185, 190, 150 A. 267, Art. 66, sec. 2.

In *Nussear v. Hazard,* 148 Md. 345, 350-351, 129 A. 506, 508 this court by Judge Offutt said, "it is not clear how such a note [one secured by mortgage] could be considered negotiable in this State, because of the statutory requirements regulating the assignment of mortgages, considered in connection with section 25 of article 66, C. P. G. L. of Maryland, which provides that the title to all promissory notes secured by mortgage shall be conclusively presumed to be in the record holder of the mortgage, and that payment of the note shall be presumed where the mortgage is regularly released." In *Sapero v. Neiswender,* 4th Cir., 23 F. 2d 403, affirming Judge Soper, *In re Bowling Construction Co.,* D. C., 19 F. 2d 604, it was held that section 26 [then 25] does not make a mortgage note non-negotiable and changes the law only in cases of conflicts arising out of assignments of mortgages and assignments of mortgage notes. In the instant case it is not necessary to decide whether a note secured by mortgage is *per se* non-negotiable. It is sufficient to say that section 26 cannot be applicable to this particular deed of trust. This deed of trust secures a negotiable note, whoever may be the holder. The deed of trust need not and properly speaking cannot be assigned like a mortgage, *cf. Jones on Mortgages,* § 1222; *Glenn on Mortgages,* § 338, but the note can be transferred freely, and, when transferred, carries with it the security, if any, of the deed of trust, which was true of a mortgage note before the Act of 1892, ch. 392, amended by Acts of 1910, ch. 719, now section 26. *Demuth v. Old*

*Town Bank,* 85 Md. 315, 37 A. 266. "The note and the mortgage are inseparable; the former as essential, the latter as an incident. An assignment of the note carries the mortgage with it, while an assignment of the latter alone is a nullity." *Carpenter v. Longan,* 16 Wall. 271, 274, 21 L. Ed. 313. A mortgage is not a negotiable instrument, and an assignee of a mortgage is subject to any defense of the mortgagor against the mortgagee. *Cumberland Coal & Iron Company v. Parish,* 42 Md. 598; *Hunter v. Chase,* 144 Md. 13, 123 A. 393; *Farmers and Merchants Bank v. Anderson,* 152 Md. 641, 137 A. 367. But an otherwise negotiable note is not non-negotiable merely because it is secured by mortgage—unless in the case of a strict mortgage it is made so by section 26. It is so held in most (though not all) jurisdictions. *Glenn on Mortgages,* § 321, *Jones on Mortgages,* (8th Ed.), § 1057.

In *Crawford v. Richards,* No. 99, 197 Md. 284, 79 A. 2d 141, decided last week, no question was raised as to the assignability of a West Virginia deed of trust by the holder of the note secured thereby. In that case both parties and the lower court stated that the note and the deed of trust had been assigned, and the only question possibly material was as to the note. We assumed that in some way the note had been assigned, and we pointed out that the decision reached made that question unimportant. If the written assignment of the West Virginia deed of trust was not legally effective as such, perhaps that might be a reason for construing it, under West Virginia law, as an assignment of the note, which would carry with it the security of the deed of trust.

Plaintiffs contend that Marcey is not a holder in due course. They say Marcey was a director of the trust company, must have known of LeBrun's indebtedness to it, and should have made inquiry about the note; that Marcey had been making investments through Prosise for years, Prosise was his agent in these transactions, and he was charged with Prosise's knowledge that the trust company had agreed to hold the note only as security

476

for the furnace account and was selling it in violation of its agreement with plaintiffs. There is no evidence of bad faith, notice of infirmity or defect in title on Marcey's part. Art. 13, sec. 71. If he knew of LeBrun's large indebtedness to the trust company, he was not thereby charged with notice that the trust company took the note for a limited purpose; he might not unnaturally have supposed the contrary. There is no evidence of fraud by Prosise in any previous transaction, still less of knowledge by Marcey of any such fraud. Prosise was an officer of the trust company and was acting for it, not for Marcey, in the sale of the note by the trust company to Marcey. *Churchville Circuit v. MacNabb,* 145 Md. 105, 125 A. 526; *Bower v. Kelbaugh,* 147 Md. 364, 128 A. 37; *Sennett v. Taylor,* 157 Md. 107, 145 A. 358. If Prosise were Marcey's agent in the transaction, Marcey would not be charged with knowledge acquired by Prosise, and not communicated to Marcey, when Prosise had an interest, whether his own or the trust company's, adverse to Marcey's interest. *Lohmuller Building Co. v. Gamble,* 160 Md. 534, 154 A. 41; *Colonial Building & Loan Association v. Boden,* 169 Md. 493, 182 A. 665; *Hardy v. Chesapeake Bank,* 51 Md. 562, 587-589. We agree with Judge Woodward that Marcey was a holder in due course. We also agree that the certification put on the note by Sherwood was not essential to the validity of the note. The fact that the certification was false, therefore, does not invalidate the note. There is consequently no ground for requiring Marcey to surrender the note for cancellation.

What defenses, if any, plaintiffs could still make in a suit against them on the note is a question not now before us. In the instant case, for instance, the defense of limitations would have been premature, and in any event would not have been available as a ground for affirmative relief by cancellation of the note. *Cunningham v. Davidoff,* 188 Md. 437, 53 A. 2d 777. We do not suggest that plaintiffs or either of them could or

could not successfully plead limitations in a suit on this note.

We also agree that the deed of trust was "null and void and of no force and effect" for want of acknowledgment and effective recording. Sherwood's false certificate of acknowledgment did not make the recording effective. We cannot, however, agree that the deed of trust was of full force and effect as an equitable lien in favor of Marcey. This court has often quoted and followed Judge Alvey's statement, for the court, in *Dyson v. Simmons*, 48 Md. 207, 214, "The principle is now so well settled, that it would seem to be beyond all question and controversy, that if a party makes a mortgage, or affects to make one, but it proves to be defective, by reason of some informality or omission, such as failure to record in due time, defective acknowledgment, or the like, though even by the omission of the mortgagee himself, as the instrument is at least evidence of an agreement to convey, the conscience of the mortgagor is bound and it will be enforced by a Court of Equity." But we have also recently said that "fraud does not create 'equities' in favor of participants in the fraud." *Kline v. Inland Rubber Co.*, 194 Md. 122, 136, 69 A. 2d 774, 780. The principle that equity will regard as done that which ought to have been done does not extend to things which by agreement one party intentionally left undone and his adversary fraudulently represented as having been done. The agreement between the parties was that the deed of trust should not be acknowledged or recorded and should be executed and delivered only to secure the furnace account and not to secure the note (although it was a negotiable note) in the hands of Marcey or any other holder in due course. The deed of trust, null and void as such, could not be effective as an equitable lien to an extent contrary to the actual understanding between the parties. Even negotiable bonds, which purport to be secured by a mortgage deed of trust, are not entitled to the security of the mortgage if they are not executed in accordance with the terms of the mortgage. *Orrick v. Fidelity & Deposit*

478

*Co.,* 113 Md. 239, 77 A. 599. A void mortgage does not acquire validity because the note which purports to be secured by it is negotiable and is in the hands of a holder in due course. If this deed of trust had been duly executed and recorded, Marcey might be entitled to the benefit of it, although the sale of the note was made in violation of the understanding between plaintiffs and the trust company. But his status as holder of the note in due course did not give life to a void deed of trust, fraudulently and illegally certified and recorded.

*Decree reversed, with costs, and case remanded for passage of a decree in accordance with this opinion.*