TOLZMAN ET UX. *v.* GWYNN, ATTORNEY NAMED IN MORTGAGE

[No. 61, September Term, 1972.]

*Decided November 20, 1972.*

The cause was argued before MURPHY, C. J., and MC-WILLIAMS, SINGLEY, SMITH, DIGGES and LEVINE, JJ.

*James R. Bucher,* with whom were *Sasscer, Clagett, Channing & Bucher* on the brief, for appellants.

*David H. Gwynn* in proper person.

SINGLEY, J., delivered the opinion of the Court.

When Rudolf Walti and Marianne Walti, his wife (the Waltis) defaulted in their payment of a second mortgage for $70,000.00 given E. Lucille McCauley (Mrs. Mc-Cauley), foreclosure proceedings were instituted in the Circuit Court for Prince George's County. At the foreclosure sale, the property was purchased by Mrs. McCauley for $54,000.00, subject, however, to a prior indebtedness of $53,430.87 secured by a first deed of trust on the property, the payment of which had been guaranteed by Alfred H. Tolzman and Mildred Tolzman, his wife (the Tolzmans).[1]

The Tolzmans excepted to the Account and Report filed by the auditor, contending that the net proceeds of the $54,000.00 sale price should have been applied in reduction of the unpaid balance of the loan secured by the first trust. From an order overruling their exceptions, the Tolzmans have appealed.

The foreclosure sale had been advertised for three successive weeks commencing 28 October 1971. The advertisement clearly stipulated that the "[p]roperty will be sold subject to a first deed of trust now in default and same cannot be assumed. Balance due on same will be announced at time of sale."

At time of sale, the balance due on the note secured by the first trust was $53,430.87; the balance due on the second mortgage debt was $65,095.84, plus interest. Immediately following the sale, the whole affair became clouded by confusion, perhaps because Mrs. McCauley held both the second mortgage and with her son, James Madison McCauley, as joint tenants, the debt secured by the first trust or perhaps because her bid of $54,000.00 so closely approximated the amount of $53,430.87 open and unpaid on the first trust.

What next happened was that the report of sale, filed

1. Deeds of trust, sometimes called "Potomac mortgages" are utilized interchangeably with mortgages in the Maryland counties which are adjacent to the District of Columbia, see *LeBrun v. Prosise,* 197 Md. 466, 473, 79 A. 2d 543 (1951).

by David H. Gwynn, the attorney named in the second mortgage, contained an unhappily ambiguous paragraph:

"He [Gwynn] offered the aforesaid property, subject to the balance due on the first trust of $53,430.87, to the highest bidder at public auction and sold the same to E. Lucille McCauley at and for the total sum of Fifty-four thousand ($54,000.00) Dollars, including [sic] the balance owed on the first trust, she being at that figure the highest bidder."

The order nisi did nothing to clarify the uncertainty:

"The report [of sale] states the amount of sale to be $54,000.00 inclusive [sic] of the balance owed on the first trust of $53,430.87."

At argument before us, Mr. Gwynn conceded that the amount of cash advanced by Mrs. McCauley was $569.13, which he computed as the difference between the bid of $54,000.00 and, for some unaccountable reason, the balance of $53,430.87 due under the first trust. Had Mr. Gwynn remembered that he was foreclosing the second mortgage, and that Mrs. McCauley was buying subject to the first trust, a bid of $569.13, however arrived at, would have carried the day, there being no other bidders. Another benefit would have accrued to his client: in effect, she would have bought in the property for $54,-000.00, rather than for $107,430.87, the sum of her bid ($54,000.00) and of the senior debt ($53,430.87).

In December 1971, the sale was ratified, and the case was referred to a court auditor for the statement of an account. In compliance with Rule 595 c of the Seventh Judicial Circuit, Mr. Gwynn submitted a draft of an account, in suggested form. There, he deducted from the sale price of $54,000.00, the balance of $53,430.87 due on the first trust, to which was added the expenses of the sale, including an attorney's fee of $100.00, and trustee's commissions of $2,810.00, with the consequence that a deficiency of $4,366.22 was developed.

The auditor restated the account, properly applying the $54,000.00 sale proceeds in reduction of the $65,095.84 balance due on the second mortgage, which after provision was made for the payment of expenses, including the attorney's fee of $100.00 provided in the mortgage and commissions of $2,850.00 payable to Mr. Gwynn as attorney named in the mortgage, resulted in a deficiency of $16,071.19. It was to this account that the Tolzmans filed exceptions, on the theory that the $54,000.00 of sale proceeds, after expenses, should have been applied in reduction of the debt of $53,430.87 due under the first trust.

Initially, the court below agreed with the Tolzmans, and entered an order which sustained their exceptions, and directed that the net proceeds of sale be applied in reduction of the debt secured by the first trust. Upon reconsideration, on Mrs. McCauley's motion for rehearing, the court entered an order overruling the Tolzmans' exceptions, which had the effect of ratifying the auditor's account. This appeal followed.

There can be little doubt that Mr. Gwynn must have been bemused by an *idée fixe* when he filed his report of sale and drafted a suggested form of auditor's account. The simple fact is, however, that he was foreclosing the second mortgage, not the first deed of trust. The advertisement of sale clearly stated, as it should have, that the property was being sold subject to the senior debt, which was in default, and could not be assumed, *see Diliansz v. Klatch,* 247 Md. 315, 318, 231 A. 2d 20 (1967). It was imperative that the net proceeds of sale be applied in reduction of the debt secured by the second mortgage, and nowhere else.

It has long been settled that a sale under a second mortgage is made subject to the debt secured by a first mortgage, unless the holder of the senior debt is made a party or assents to a sale free of the debt he holds, *Martin v. Golden Key Homes, Inc.,* 244 Md. 367, 374-75, 223 A. 2d 589 (1966); *Baltimore Federal Savings & Loan Ass'n v. Eareckson,* 221 Md. 527, 529-30, 158 A.

2d 121 (1960) ; *Bregel v. Beckman,* 157 Md. 471, 475-76, 146 A. 231 (1929) ; *Tobin v. Rogers,* 121 Md. 249, 252, 88 A. 133 (1913). We find nothing in the record before us to support the Tolzmans' contention that Mrs. McCauley assented to a sale free of the senior debt and it may well be that on the record before us, she could not have done so without the joinder of her son. To the contrary, the advertisement made it quite clear that the senior encumbrance was being preserved. Under our view of the case, it is unnecessary to consider Mrs. McCauley's contention that the Tolzmans lacked standing to except to the auditor's report and account. *Compare Southern Maryland Oil, Inc. v. Kaminetz,* 260 Md. 443, 449, 272 A. 2d 641 (1971) *with* Maryland Rule 208 a (b).

Because we are quite satisfied that under all the circumstances, the bid of $54,000.00 was wholly unnecessary—especially since Mr. Gwynn himself testified that he regarded his bid as a cash offer of $569.13—we propose to modify the order ratifying the auditor's account to the end that commissions allowed him as assignee shall be in the amount of $56.91, Seventh Circuit Rule BR 7 a and b, and not in the amount of $2,850.00. In so doing, we do not intend that there shall be any change in the deficiency of $16,071.19 developed by the auditor's account.

> *Order modified, and as modified, affirmed. Costs to be paid by appellee.*