LEISTER ET AL. *v.* CARROLL COUNTY NATIONAL
BANK OF WESTMINISTER
(Two Appeals in One Record)

[No. 87, October Term, 1951.]

*Decided February 8, 1952.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, HENDERSON and MARKELL, JJ.

*Neil C. Fraley* for the appellants.

*Ralph G. Hoffman,* with whom were *William R. Offutt, D. Eugene Walsh* and *Theodore F. Brown* on the brief, for the appellee.

HENDERSON, J., delivered the opinion of the Court.

The controversy in this case arises out of the insolvency of a canning company and involves the relative priority of the claims of two creditors.

The Mountain Lake Canning Company, Incorporated, was incorporated in 1946 by Leister and wife and Roland N. Shaffer and wife, each of whom were named as incorporators and directors. Leister became the president. Each couple paid $25,000 for 250 shares of capital stock. The company purchased certain real estate in Garrett County, rebuilt a cannery building that had been destoryed by fire, and purchased new machinery and equipment. In 1947, the company needed operating capital and secured a line of credit, up to $25,000, from the Farmers and Mechanics National Bank of Westminister, later merged into the Carroll County National Bank of Westminister. Leister was a director of that Bank. The operations in 1947 and 1948 were not profitable. In June of 1948 a Mr. and Mrs. Welch

bought eighty shares of stock, for which they paid in $8,000. Welch was subsequently elected president of the corporation. Leister and his wife advanced money from time to time. In December 1948, they advanced $7,500, taking a mortgage to cover that sum and $5,500 due on previous advances. In April 1949, Leister and wife agreed to advance $25,000 in consideration of a new mortgage for $38,000, releasing the old mortgage of $13,000. They borrowed $20,000 on a joint note from a Pennsylvania bank and paid this sum to the company at the time the mortgage was executed on April 13, 1949, but the remaining $5,000 was not paid until May 23, 1949. It was explained that the delay was due to the necessity of giving notice of withdrawal to a savings bank where they had a joint account. Of the $20,000 paid in, $7,500 was paid to the Carroll County National Bank on April 14, 1949, reducing the company's indebtedness to the bank from $19,500 to $12,000. $7,500 was used to pay or reduce a loan from another bank. The remaining money was used for operating expenses. The canning operations in 1949 were again unprofitable. Efforts to raise money for the 1950 canning season were unsuccessful. On April 11, 1950 the company executed a deed of trust for the benefit of creditors. All of its assets have been sold for less than $40,000. Total claims, including the mortgage claim, aggregate $92,500.

On May 15, 1950 the bank filed this proceeding praying that Leister be adjudged to owe the bank $12,500, or alternatively that the $38,000 mortgage be held invalid. The chancellor denied the first prayer but held the mortgage invalid as one for future advances. Both parties have appealed.

Considering the cross-appeal first, we think the chancellor's ruling was correct. There is nothing to support a contention that Leister in fact guaranteed the bank's loan, or indorsed the company's note. The bank dealt with the corporation will full knowledge that Leister was a stockholder, director and officer. The facts do not call for a disregard of the corporate entity so as to

hold Leister personally liable. Cf. *Carozza v. Federal Finance Co.,* 149 Md. 223, 131 A. 332, 43 A. L. R. 1. The operation of a cannery is notoriously a speculative business; there was testimony in the case that one good season might have paid off all indebtedness and paid for the whole cost of the plant. The failure seems to have been due primarily to bad crops, falling prices and other circumstances beyond the management's control. In advancing money to the corporation the bank did so with its eyes open. The subsequent advances by Leister in 1949 resulted in a substantial reduction in the bank's stake, and gave it a chance to recover the balance if the season of 1949 should prove to be profitable, as everyone hoped it would.

The cross-appellant contends, however, that on general equitable principles his claim, and that of his wife, should be subordinated to that of the bank. It contends that as a director of the company he could not legally secure his loan by taking a mortgage on the company's property. This proposition is too broadly stated. In *Clark Co. v. Colton,* 91 Md. 195, 46 A. 386, 49 L. R. A. 698, on which the cross-appellant relies, the facts were quite different. There, upon the eve of a bank failure, certain directors having unsecured claims were paid in full, and the receivers brought a bill to set aside the payments as unlawful preferences. In the instant case the mortgage under attack was given for a full consideration of $25,000 in new money paid in and the release of a prior mortgage the validity of which is not questioned. The new mortgage was duly recorded. It is difficult to see how subsisting creditors were damaged by the transaction. It is not suggested that the company would have lacked the power to borrow on a mortgage from a third party. Moreover, there was no effort to attack the mortgage as a preference under Article 47, section 14 of the Code within the statutory period. We think the case of *Hammond v. Lyon Realty Co.,* 163 Md. 442, 163 A. 480, is controlling on this point, under either of the separate opinions there filed. See also

*Goertz v. Backman*, 195 Md. 450, 456, 74 A. 2d 3, 5. A mortgage made in good faith by a going concern to its directors upon a full consideration, even though the borrowing company is technically insolvent, cannot be attacked on general equitable grounds. *Sanford Fork & Tool Co. v. Howe, Brown & Co.*, 157 U. S. 312, 15 S. Ct. 621, 39 L. Ed. 713. Cf. *Manufacturers Trust Co. v. Becker*, 338 U. S. 304, 310, 70 S. Ct. 127, 94 L. Ed. 107.

The cross-appellant contends, however, that the case is altered by the fact that Leister was also a director of the bank and under a duty to acquaint it with the fact that a mortgage was being executed. It points to the fact that a financial statement given to the bank on May 1, 1949 by the company contained an item of "Notes payable—R. E. Leister.... $33,000", without indicating that the account was secured. Leister testified, however, that he told the chairman of the board of directors of the bank, Mr. Cunningham, all about the mortgage at the time the company paid $7,500 to the bank in April 1949. Cunningham did not take the stand or deny this testimony, which stands uncontradicted in the record. Notice to the chairman was, of course, notice to the bank. In any event it is conceded that at a meeting of the board of directors in the first week of August, 1949 the board was informed of the mortgage and instructed the bank's counsel to verify its recording, which he did. No complaint was made to Leister at that time nor was any action taken to set aside the mortgage as a preference. As a matter of fact the money was not advanced by Leister alone, but by Leister and his wife out of their joint funds, and the mortgage ran to them jointly. Mrs. Leister was not, of course, under any duty to inform the bank of her loan. Under all the circumstances we think that their claims should not be subordinated to that of the bank, and we find no merit in the cross-appeal.

The appeal challenges the action of the chancellor in holding the mortgage invalid as one for a future advance. Section 2, Article 66 of the Code (1947 Suppl.) provides:

"No mortgage or deed in the nature of a mortgage shall be a lien or charge on any estate or property for any other or different principal sum or sums of money than the principal sum or sums that shall appear on the face of such mortgage and be specified and recited therein, and particularly mentioned and expressed to be secured thereby at the time of executing the same; and, except as hereinafter provided, no mortgage or deed in the nature of a mortgage shall be a lien or charge for any sum or sums of money to be loaned or advanced after the same is executed, except from the time said loan or advance shall be actually made; and except as hereinafter provided, no mortgage to secure future loans or advances shall be valid unless the amount or amounts of the same and the times when they are to be made shall be specifically stated in said mortgage; * * *."

The statute is an aggregation of prior statutes. Their history is discussed in *Welsh v. Kuntz,* 196 Md. 86, 75 A. 2d 343. The first clause was enacted by Chapter 50, Acts of 1825, and its purpose was discussed in *Cole v. Albers,* 1843, 1 Gill 412, 424, relied upon by the appellant. But we are not concerned with that clause in the instant case. The second and third clauses were not enacted until the passage of Chapter 213, Acts of 1872. Since the enactment of that Act most of the cases have dealt with the question whether the advances were present or future. It has been held that advances to a third party, where the mortgagee parts with possession of the funds, are not in violation of the statute, although the mortgagor is not presently entitled thereto. *Neeb v. Atlantic Mill & Lumber Co.,* 176 Md. 297, 5 A. 2d 283, and cases cited. The same result has been reached where the funds have been deposited with a corporate mortgagee, but the mortgagor has an unqualified right to draw on them as work progresses. *White Eagle Polish American Building & Loan Association v. Canton Lumber Co.,* 168 Md. 199, 178 A. 214, and cases cited. See also the discussion of the cases by *Watkins* in 4 *Md. L. R.* 111, and *Geortz v. Backman, supra.* In the instant case no such situation existed, so

far as the $5,000 is concerned. The lender merely promised to pay it at some undisclosed later date. This was clearly a future advance.

In the leading case of *High Grade Brick Co. v. Amos,* 1902, 95 Md. 571, 52 A. 582, 53 A. 148, it was held that where the mortgages did not state on their face the dates of future advances, the mortgages were invalid, and could not be given effect as equitable liens to the extent of the actual payments made in the course of the building operation. The court said, 95 Md. at page 598: "to do so would be to exercise our equitable powers to defeat not only the policy but the positive provisions of the statute law. The appellees are of course creditors * * * for the advances made * * * but the repayment thereof was not secured by these mortgages." In the somewhat analogous situation of a defectively executed mortgage, it has been held that it can be given effect as an equitable lien. *Jackson v. County Trust Co.,* 176 Md. 505, 6 A. 2d 380. Cf. *Le Brun v. Prosise,* 197 Md. 466, 477, 79 A. 2d 543, 549.

In *Groh v. Cohen,* 158 Md. 638, 644, 149 A. 459, 461, it was held that a mortgage for future advances was invalid, as against subsequent mechanics' liens, but should nevertheless be preferred to judgments previously rendered "to the extent of the money actually advanced under the mortgages, which was used in the purchase and improvement of the property." In short, although the mortgage was invalid it was given effect as an equitable charge on the specific property in priority to the general lien of the existing judgments "rendered on claims which could not have been contracted on the faith of the judgment debtor's subsequently acquired property interests."

We think the *Groh* case cannot be held to overrule the *High Grade Brick Co.* case, which it cited with approval. This was the view taken by Judge Chesnut in the case of *In re Shapiro,* D. C., 35 F. Supp. 737; his opinion was adopted on appeal in 118 F. 2d 348. Applying the Maryland law, it was held that future advances, made in good faith within a few months after the execution of

the mortgage, could not be recognized as equitable liens. He expressed regret at this result, which was also characterized as "drastic" in *3 Glenn, Mortgages,* §§ 403, 404. Indeed, the Maryland statute, and particularly the third clause, appears to be almost unique in the English-speaking world. It has never had a State-wide application in Maryland. In other jurisdictions the controversy is not as to the validity of mortgages for future advances, but chiefly whether they should be preferred to the claims of subsequent lienors, especially in cases where the lender was not obligated to make such advances. See note 138 A. L. R. 566. However, the call for legislative change or modification voiced by *Watkins* in 4 *Md. L. R. supra,* has not been heeded, and we are constrained to follow the rule laid down in the *High Grade Brick Co.* case. It follows that the $5,000 payment cannot be given effect from the date of its payment as an equitable lien.

In none of the cases cited, however, was any part of the money advanced contemporaneously with the execution of the mortgage. In the instant case, $20,000 was paid at that time and a preexisting mortgage was released. So far as these transactions are concerned, they are in no sense future advances. We perceive no reason why the mortgage cannot be given effect *pro tanto,* in accordance with the general rule that partial invalidity does not invalidate the whole where the transactions are separable. *1 Jones, Mortgages* (8th ed.) § 449; 59 C. J. S. § 176, page 218. That result has been reached in New Hampshire under a somewhat similar statute limiting or prohibiting future advances. *Johnson v. Richardson,* 38 N. H. 353; *Stavers v. Philbrick,* 68 N. H. 379, 36 A. 16. On this point we find error in the Chancellor's ruling. The lien of the mortgage should be declared invalid only to the extent of the $5,000 future advance.

> *Decree affirmed in part, reversed in part and case remanded for modification of the decree in accordance with this opinion, with costs.*