32 A.3d 542

**Anne–Therese BECHAMPS, Substitute Trustee**

v.

**1190 AUGUSTINE HERMAN, LC, et al.**

**No. 2566, Sept. Term, 2010.**

Court of Special Appeals of Maryland.

Dec. 2, 2011.

Matthew R. Alsip (Daniel P. Moylan, Venable, LLP, on the brief) Towson, MD, for appellant.

Brett R. Myerson (Steven R. Freeman, Christopher W. Porter, Freeman, Wolfe & Greenbaum, PA, on the brief) Towson, MD, for appellee.

Panel: EYLER, JAMES R., MEREDITH and MATRICCIANI, JJ.

EYLER, JAMES R., J.

This is an appeal from an order by the Circuit Court for Cecil County, staying a non-residential real estate foreclosure proceeding, brought by Anne–Therese Bechamps as substitute trustee, appellant, against 1190 Augustine Herman, LC ("1190"), debtor. While a court has inherent power to stay proceedings, it abused its discretion in this case because the stay was not consistent with the Maryland Rules governing foreclosures. Consequently, we shall vacate the order.

## Background

### *I. Interests in the Property*

For decades before this litigation arose, the property subject to the foreclosure, located at 1190 Augustine Herman Highway in Cecil County (the "Property"), was used as a golf course. Harold West, predecessor in interest to appellee WFHI, LLC ("WFHI"), an appellee, had an interest in the Property, beginning in the late 1980s. In 2000, the Property was known as Brantwood Golf Course and was owned by Brantwood Development Associates, Inc, which entered into a series of financial transactions with Mr. West that year. As a result, Mr. West held, *inter alia*, a lien interest on the Property and two promissory notes, which were payable upon the sale of the Property. Several years later, interested local citizens began implementing a plan to purchase the Property, to operate as a golf course initially and eventually to develop as a residential subdivision. 1190 obtained a loan from Cecil Bank (the "Bank"), secured by an indemnity deed of trust, and

purchased the Property in February 2006. The same month, 1190 entered into a subordination agreement with Mr. West and the Bank by which Mr. West's lien interest on the Property was made junior to the lien interest the Bank acquired through its loan to 1190 and under which Mr. West's existing notes were replaced by a new promissory note with payment delayed.

At the time it purchased the Property, 1190's members consisted of Brian Lockhart, Michael Riggs, Appellee Jeffrey M. Haggerty, and a second entity, DE Club, LC, ("DE") which owned a 60% interest in 1190. Haggerty and Riggs were friends of West's, and Lockhart was an acquaintance who was employed by the Bank. DE was owned thirty-six percent by Charles F. Sposato, Chairman of the Board of the Bank, thirty-six percent by Mary B. Halsey, Bank President and CEO, seventeen percent by Mr. Lockhart, and eleven percent by others. Thus, DE controlled 1190 through its majority ownership, and DE itself was majority owned by officers of the Bank.

## II. The Subordination Litigation

On February 9, 2009, Mr. West conveyed his interest in the Property and all corresponding causes of action to WFHI, a Delaware entity controlled by Mr. West. On May 29, 2009, WFHI brought an action in the Circuit Court for Cecil County against Mr. Lockhart, 1190, the Bank, and Brantwood Golf Course, Inc. ("Brantwood"), alleging that West was fraudulently induced into subordinating his lien interest in the Property to the Bank's interest. According to WFHI, Mr. West agreed to subordinate his lien interest in the property as a favor to his friends, Mr. Haggerty and Mr. Riggs, whom, along with Mr. Lockhart, he thought would each own a one third interest in the Property. He believed that those individuals would be unable to obtain a loan to buy the Property if the lender's interest would be junior to his own, according to WFHI, and he also believed they would be unable to acquire sufficient funds to satisfy Mr. West's promissory notes and still purchase the property. WFHI argued that Mr. Lockhart

allowed Mr. West to operate under the continuing impression that the Property would be owned by Mr. Haggerty, Mr. Riggs and Mr. Lockhart even after DE acquired its controlling stake in 1190. WFHI claimed that Mr. West would not have agreed to subordinate his lien if he had known DE would own the majority share of the Property.

As a remedy in that action, WFHI sought rescission of the subordination agreement, which would have reduced the Bank's lien on the Property to junior status. It did not seek to void the other 2006 transactions that resulted in the sale of the Property to 1190. On October 22, 2010, the circuit court held a summary judgment hearing. Counsel for WFHI explicitly stated at the summary judgment hearing that the essence of that litigation was WFHI's challenge to the validity of the subordination agreement:

> And so the subordination and modification agreement says you are subordinating and you're modifying the terms of your existing Deed of Trust. **What we really are asking for is that the subordination aspect of that be rescinded or voided.** If that were to happen the modification would still be in place, the 2006 note would be left in place; and **all it would change is the shift in priorities ... [the Bank] would go from first position to second.** (emphasis added).

Following argument, the circuit court granted summary judgment to the defendants, leaving intact the subordination agreement and the Bank's first priority position on the Property. An appeal from that decision is pending in this Court.

### III. The Foreclosure Litigation

The lending agreements between 1190 and the Bank required 1190 to make monthly payments to the Bank. 1190 failed to make those payments after March 2010, and on April 2, 2010, William F. Riddle, as substitute trustee for the Bank, brought a foreclosure action against 1190 in circuit court. That action was dismissed without prejudice, and on September 23, 2010, Mr. Riddle brought the instant action. On December 20, 2010, appellant replaced Mr. Riddle as substitute trustee.

The foreclosure sale was scheduled for October 15, 2010. 1190 did not participate in circuit court or in this appeal. On October 7, 2010, Brantwood Golf Club, Inc., Mr. Haggerty, Jamie L. Senn, Darrell W. Evans, Steven W. Linkous and Robert J. Alt (the "Brantwood Group"), appellees, moved to intervene, alleging an interest as members of 1190, DE Club, LC, or as guarantor of the Bank's loan. On October 8, 2010, WFHI, asserting a superior lien, filed a motion to stay the sale of the Property and dismiss the foreclosure action. On October 13, 2010, the circuit court granted the Brantwood Group's motion to intervene. On or about the same day, the Brantwood Group filed a motion to stay the sale of the Property or to dismiss the foreclosure action. Also on October 13, 2010, the court ordered a stay of the foreclosure sale pending review on the merits.

On December 13, 2010, the circuit court held a hearing on the merits, at which both the Brantwood Group and WFHI argued that the foreclosure sale should be stayed and/or dismissed because of other pending litigation, including the subordination litigation, that could affect interests in the Property. At the conclusion of the hearing, the court did not dismiss the foreclosure but ordered it stayed until resolution of the appeal in the subordination litigation. The same judge granted both the stay in this litigation and the summary judgment in the subordination litigation.

### Questions Presented

Appellant presents the following two questions for our review:

1. Did the Circuit Court possess the authority to, *sua sponte*, indefinitely stay (or enjoin) this non-residential foreclosure action when Maryland Rule 14–211 does not provide such authority?

2. Assuming, *arguendo*, that it possessed authority to do so, did the Circuit Court err by indefinitely staying (or enjoining) this non-residential foreclosure action when Appellees provided no basis for such a stay under Maryland Rule 14–211?

### Standard of Review

██ We review a trial court's decision to stay a proceeding for an abuse of discretion. "Whether to grant or deny a stay of proceedings is a matter within the discretion of the trial court, and only will be disturbed if the discretion is abused." *Vaughn v. Vaughn*, 146 Md.App. 264, 279, 806 A.2d 787 (2002).

### Discussion

Appellant contends that the circuit court lacked the authority to stay the foreclosure sale because Md. Rule 14–211 is controlling, and in any event, there was no valid basis for a stay. Appellees argue that the circuit court's action was proper based on its inherent powers, not because of any specific provision of the Maryland Rules.

### I. Authority to Grant the Stay

██ The circuit court did not articulate under what authority it granted the stay of the foreclosure sale. We agree with appellees that courts have inherent power to stay proceedings when the resolution of those proceedings could be impacted by other pending proceedings. For example, in an analogous context, the Court of Appeals has stated:

> [I]n a proper case a court may stay proceedings pending the determination of another issue that may affect the issues raised. A fortiori, a trial court may grant a temporary stay of execution to preserve the status quo for a short time pending a hearing in regard to the validity of the attachment or garnishment.

*Dodson v. Temple Hill Baptist Church, Inc.*, 254 Md. 541, 546, 255 A.2d 73 (1969) (citations and quotations omitted). Appellees cite *Dodson* in support of their position; however, they extend it too far. The Court of Appeals in *Dodson* authorized trial courts to stay execution pending the results of other proceedings when the other proceedings could affect the "validity of the attachment or garnishment." *Id.* There is no suggestion in *Dodson* that a trial court can exercise its inherent power to stay proceedings when the other proceeding does

not challenge the validity of the executing party's interest, but only matters not going directly to the right of the party to the remedy sought.

Viewed with this understanding, a circuit court's inherent power to stay is in accord with, rather than opposed to, its express power to stay foreclosure proceedings described in Md. Rule 14–211. Under Md. Rule 14–211(a)(3)(B), the moving party must state any defenses it has "to the validity of the lien or lien instrument or to the right of the plaintiff to foreclose in the pending action." This makes clear that Md. Rule 14–211 contemplates the grant of motions to stay and dismiss only when the moving party possesses defenses that potentially could defeat the ability of the foreclosing party to foreclose. Such defenses are the only grounds upon which a trial court may grant a Rule 14–211 motion, as explained in Rule 14–211(e), which provides:

> After the hearing on the merits, if the court finds that the moving party has established that **the lien or the lien instrument is invalid or that the plaintiff has no right to foreclose** in the pending action, it shall grant the motion and, unless it finds good cause to the contrary, dismiss the foreclosure action. **If the court finds otherwise, it shall deny the motion.**

(emphasis added).

The applicable version of Rule 14–211 was approved on February 10, 2009, and was effective on May 1, 2009. The change was part of the 160th report by the Rules Committee. In the cover letter to the Court of Appeals forwarding that report, dated December 3, 2008, the Hon. Alan M. Wilner, chair of the Rules Committee, wrote

> A number of significant changes are recommended to the Rule governing a stay of the sale (proposed Rule 14–211). The Rules Committee proposes to detach that procedure from the Rules governing injunctions and to deal with it in a Rule specific to foreclosure sales. The Rule attempts to strike a fair balance by providing borrowers and others with sufficient standing, who have a legitimate defense to the

foreclosure, a reasonable and practical opportunity to raise the defense, but not allowing for frivolous motions intended solely to delay the proceeding. Because the only basis for a stay of sale will be a defense to the lien or the action itself, the motion to stay will be treated as a motion to dismiss the foreclosure action.

The Reporter's Note to Rule 14–211 reiterates Judge Wilner's explanation of the grounds upon which a 14–211 motion to stay and dismiss can be granted. It provides, *inter alia*, that such a motion "must state a valid defense to (1) the validity of the lien, (2) the validity of the lien instrument, or (3) the right of the plaintiff to foreclose on the pending action."

Thus, pursuant to the express language in Rule 14–211, stays of the type at issue in this case may be granted only when other pending litigation could affect the plaintiff's ability to foreclose. Additionally, Rule 14–211(e) makes it mandatory for the circuit court to deny the motion if the moving party fails to present a defense to the foreclosure itself. Peripheral matters that do not affect the ability of the party to foreclose cannot justify a stay of foreclosure under Rule 14–211 or under the rationale articulated in *Dodson.*

## II. Abuse of Discretion

■ The circuit court stayed the foreclosure proceeding pending appellate resolution of the subordination litigation. The subordination litigation dealt with the validity of the subordination agreement, not with the validity of the Bank's lien on the Property. Indeed, as discussed *supra*, counsel for WFHI conceded at the summary judgment hearing that WFHI sought only rescission of the subordination agreement and that the practical effect of that remedy would be to place the Bank's lien junior to that of WFHI, not to invalidate the Bank's lien.

■ This Court has not yet resolved the subordination litigation appeal. If WFHI prevails on appeal and, subsequently, is able to rescind the subordination agreement, the Bank's lien would continue to be valid. The subordination

agreement challenges priority only and not validity. While success by WFHI in this parallel litigation would reduce the Bank's lien to junior status, it would neither render that lien invalid nor affect the Bank's legal right to foreclose on the property. Junior lienors possess the right to foreclosure. *See, e.g., Tolzman v. Gwynn,* 267 Md. 96, 99, 296 A.2d 594 (1972). Thus, resolution of the subordination litigation, regardless of its outcome, would not render the Bank unable to foreclose on the property.

The circuit court was required under Rule 14–211 to deny appellees' motion after the December 13, 2010 merits hearing, as appellees did not challenge the validity of the lien or the Bank's right to foreclose. Such action is mandatory under Rule 14–211(e). In light of the specific nature of Rule 14–211, its intent and purpose, a court's inherent power to stay, if that was the court's basis, should not have been used, and it was an abuse of discretion to grant the stay.

We acknowledge that the resolution of the subordination appeal may affect the current priority of the liens on the Property and, thus, the distribution of any proceeds from the foreclosure. The parties disagree as to the effect of a foreclosure by a junior lienor on a senior lien. Accordingly, while we shall vacate the stay, we do so without prejudice to the right of appellees to seek relief from the court to protect their interests with respect to an accounting for and distribution of any proceeds after ratification of sale if the pending appeal by WFHI has not been resolved.

**ORDER OF THE CIRCUIT COURT FOR CECIL COUNTY STAYING FORECLOSURE PROCEEDINGS VACATED. COSTS TO BE PAID BY APPELLEES**